J. NELSON SCHNEIDER, by next friend, JOHN H. SCHNEIDER, and JOHN H. SCHNEIDER, individually, appellees, v. JAMES D. PARISH, appellant.

No. 47834.

(Reported in 49 N.W.2d 535)

1148

OCTOBER 16, 1951.

McNett, Kuhns & Moon, of Ottumwa, and F. M. Beatty, of Sigourney, for appellant.

Updegraff & Updegraff, of Sigourney, for appellees.

THOMPSON, J. — This action was brought under section 321.494 of the Iowa Code of 1946, designated as the "guest statute." The section is identical with the same numbered statute in the Code of 1950. The petition was filed jointly by the guest passenger who was injured, J. Nelson Schneider, a minor, by his next friend, John H. Schneider; and by his father, John H. Schneider, claiming for loss of services of J. Nelson Schneider, and for expenses incurred. The cause was submitted to a jury, which re-

turned a verdict for J. Nelson Schneider in the sum of $6750 and for John H. Schneider for $2500.

The accident leading to this litigation occurred about 5 p.m. on August 15, 1948, at the intersection of Iowa State Highways Nos. 92 and 149, in Keokuk County. J. Nelson Schneider was at the time riding on a motorcycle owned by defendant and driven, with his consent, by Wilburn E. Daily, who was killed in the collision. J. Nelson Schneider was riding behind Daily, on what is known as the "buddy seat" of the motorcycle. He was seriously injured.

Highways 92 and 149 are paved, and form a T intersection not far from the city of Sigourney. No. 92 is an east-and-west highway, while No. 149 comes from the north, and a short distance north of the intersection divides into two arms, forming a Y for the purpose of entering No. 92. We are concerned with the west arm. No. 149 does not cross 92, but goes west for some distance on the same pavement as 92. There is an unpaved dirt road running on south from the intersection; and about opposite the center of the Y, on the south side of No. 92 is a filling station and café. About seventy-five feet west of the west intersection of 149 and 92 is a bridge, estimated as being from twenty to thirty feet long. At the time of the accident the pavement was dry and daylight visibility was good. No. 92 runs straight approximately east and west at this point, and can be seen for perhaps a mile to the east for some distance from the west of the intersection.

As the motorcycle driven by Daily and carrying Schneider as a passenger approached the intersection (by which we mean the west arm of No. 149 with No. 92) from the west it was behind two trucks traveling in the same direction. The rear truck was driven by Dallas Kitzman. It was loaded with cattle; was a dual wheeled truck equipped with a stock rack, and was thirteen and one-half feet long and from ten feet and three inches to ten feet and six inches high. The lead truck was about the same size, but was a closed body or grain bed type. Apparently this truck did not stop following the accident; at least no one discovered the name of the driver or ownership of the vehicle. The distance between the two trucks as they approached the bridge west of the intersection is not given, but at any rate there is competent evi-

dence from which the jury could have found that, when it was about two truck lengths west of the bridge the driver of the first truck gave a signal indicating a left turn, by putting his hand and arm out of the cab window about six inches. At this time the motorcycle was following the rear truck. As the front wheels of this truck came upon the bridge, the motorcycle started to pass it, going at a speed of fifty to sixty miles an hour. Kitzman, the driver of the truck, saw the motorcycle beside his cab at this time. As the motorcycle cleared the bridge the front truck turned left across the pavement to enter the west arm of the Y upon No. 149.

At this time the distance between the front of the rear truck and the rear of the lead truck was about twenty to thirty feet, according to the best estimate of Kitzman. He had slowed the speed of his vehicle to give the front truck time to make the left turn. The driver of the motorcycle was then confronted with the first truck across the roadway in front of him. He attempted to cut between the rear of this truck and the front of the second truck by swinging to the right, but the left handlebar of his machine struck the rear right corner of the front truck, throwing the motorcycle out of control so that it shot across the south side of No. 92 and across the shoulder and the open space beyond and struck a car parked in front of the café, badly damaging the car and the motorcycle, killing Daily and inflicting severe injuries upon Schneider.

Daily lived near St. Joseph, Missouri, and apparently was not familiar with the highway upon which he was driving. There is no evidence as to highway signs to the west of the intersection indicating the approach to a junction, unless it can be gained from some photographs introduced in evidence. One of these shows that at the right-hand side of the west end of the bridge there was a sign indicating by an upright arrow that Washington lay straight ahead, while an arrow just below it pointed to the left to Cedar Rapids. Some hundreds of feet back of the bridge and to its west, and so to the west of the intersection, one or two of the pictures show indistinctly some highway signs, which we shall assume, for the purpose of the discussion which follows, indicated that a junction of No. 92 with another highway was being approached.

■■ I. We have set forth the foregoing facts as if fully proven. There is little conflict in the evidence; and in any event we are cognizant of, and have followed, the rule that in determining whether there was generated a sufficient question to require submission to the jury the evidence must be viewed in the light most favorable to the plaintiff. Two other well-established rules are also to be kept in mind: 1. That if there is a conflict in the material evidence, or if the minds of reasonable and informed men might differ on the conclusions to be reached, then, and not otherwise, the matter is for the jury; and 2, that the burden was at all times upon the plaintiffs to show recklessness within the meaning of the guest statute. It should be said in passing that there is no claim that J. Nelson Schneider was not a guest within the meaning of this statute, and there is likewise no claim of intoxication involved.

II. Defendant assigns many errors, but the only ones we find it necessary to discuss are those based upon the refusal of the trial court to sustain the motion for directed verdict, or, failing that, to grant the motion for judgment notwithstanding verdict. We are of the opinion that each of these motions was well founded.

The Iowa guest statute has been before this court many times, and under varying sets of facts there have been varying rulings. Judge Henry Graven of the United States District Court, Northern District of Iowa, in his able and exhaustive analysis in Russell v. Turner, 56 F. Supp. 455 (affirmed by the Eighth Circuit Court of Appeals, 148 F.2d 562), cites, at page 459, the cases which have been decided under this section. There are many in which it has been held that a jury question was engendered; about twice as many in which a directed verdict was held to be required. It is cold comfort for a lawyer, or a trial judge, who finds himself involved with this statute, to be told that each case must depend upon a proper interpretation of the law as applied to the particular facts before him; but certainly no hard and fast rule which will apply to all situations can be devised. Justice Evans, in Shenkle, admr. v. Mains, 216 Iowa 1324, 1328, 247 N.W. 635, 637, laid down a general principle to be kept in mind in these cases. It was quoted with approval in Olson v. Hodges, 236 Iowa 612, 622, 623, 19 N.W.2d 676, 682, a case in which Justice Bliss re-

1152

viewed many of the authorities bearing upon the question involved here. The quotation is this:

" 'The statute calls imperatively upon us to recognize a substantial distinction between negligence and reckless operation. * * * Having laid down in the Siesseger case [213 Iowa 164, 239 N.W. 46] the line of demarcation to the best of our ability, our remaining duty for the future is to apply the rule without vacillation to the concrete facts of the particular case. Such has been our course in the cases here above cited. The two grounds upon which recovery may be predicated under section 5026-b1 [section 5037.10, 1939 Code] are exceptional and not general. The general rule is that a guest cannot recover. The exceptional grounds are: (1) "intoxication" of the driver, (2) "reckless operation" by the driver. The exceptional character of these grounds implies an infrequency of application thereof. To use and apply the exceptions as the general rule, and in effect to supplant the general rule with the constant use of the exceptions, is to drive against a red light. If the application of the exceptions becomes more frequent than that of the general rule, it may well be deemed a warning sign that we are misapplying the exceptions.' " Shenkle v. Mains, supra.

■ Another principle, which Judge Graven thinks has developed in the handling of these cases by this court, is that of the distinction between probable and possible dangers. Russell v. Turner, supra, 56 F. Supp. at page 462. The learned federal judge believes that, where the conditions are such that injury to the guest would be the probable result of the driving of the motor vehicle in the manner shown, the question of recklessness is for the jury; but where the danger of injury is a possibility only, that our cases indicate a peremptory instruction for the defendant should be given. Analogous to Judge Graven's thought here is a line of demarcation which we believe to be sound, and which we think our cases have generally followed. It is that the danger must have been known to the driver (see Peter v. Thomas, 231 Iowa 985, instruction approved at page 988, 2 N.W.2d 643, 645), and that he acted in entire disregard of it; or that the danger was so obvious and apparent that the driver must have used no care

at all in failing to observe it (White v. Center, 218 Iowa 1027, 1033, 254 N.W. 90, 92), if a jury issue is to be submitted.

With these general rules is also to be kept in mind the definition of recklessness laid down in the leading Iowa case of Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54, where we said:

"\* \* \* it is apparent, we think that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.'"

This definition has been followed ever since, and, as said by Justice Smith in Hebert v. Allen, 241 Iowa 684, 688, 41 N.W.2d 240, 242, "without being materially improved upon." This definition, with the general principles set forth in the two preceding paragraphs, and in Division I, should be kept in mind in cases arising within the provisions of the guest statute; but even then their application to the facts of each case will often be troublesome. But the law is not an exact science, and it is the problem of application of established rules to the varying fact situations which arise which makes it the difficult but fascinating study that it is.

III. It remains to determine whether the facts in evidence in the case before us, viewed in the most favorable light to the plaintiffs, make a jury question upon the issue of recklessness. Plaintiffs cite four cases: Hebert v. Allen, supra; Fraser, admr. v. Brannigan, 228 Iowa 572, 293 N.W. 50; Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645; and White v. Center, supra. Hebert v. Allen was decided upon what the majority of the court believed to be evidence of the wilfulness of the driver of the car in deliberately placing his guest in a position of danger; and while recklessness does not necessarily include wilful or wanton conduct, it may do so. In the other three cases the court felt that the danger was so probable, and should have been seen or anticipated so clearly, that the driver's conduct showed "no care" within the

meaning of the definition in Siesseger v. Puth, supra. Such conduct is not apparent here.

We think that the fact situation in this case is clearly ruled by Harvey, admr. v. Clark, 232 Iowa 729, 733, 6 N.W.2d 144, 146, 143 A. L. R. 1141, 1144. The automobile involved there was driven into the side of a moving train at a railroad crossing. The evidence showed that the train had whistled for some distance back of the crossing, and that there was a red wigwag signal on the right-hand side of the crossing from which the car approached, which was in operation; that is, swinging back and forth. Justice Garfield, speaking for the court, said:

"As we view it, substantially this question is presented: Is a jury finding of recklessness justified merely from proof that an automobile was driven into the side of a moving passenger train at night when the driver apparently did not see a wigwag crossing signal which was in operation? Like the court below, we answer in the negative."

See also Long v. Pearce, 233 Iowa 1025, 10 N.W.2d 50.

Mere inadvertence, thoughtlessness, errors of judgment, or any other negligences not amounting to a heedless disregard of or indifference to consequences are not sufficient to carry a guest-statute case to the jury. It is apparent that this must be so, or there would have been no reason for the enactment of the statute. Nor should we abrogate the law by a construction which would, in effect, destroy it.

In the case before us the facts are not as strong for plaintiffs' case as they were in Harvey v. Clark or Long v. Pearce, both supra. The driver of the motorcycle quite evidently failed to see the hand signal given by the driver of the lead truck, and he apparently failed to observe that he was approaching an intersection. There would have been nothing particularly wrong with the speed at which he was traveling or his manner of passing the rear truck, except for the left-turn signal and the nearness of the intersection. We must remember that at the time the hand signal was first given, the motorcycle was presumably behind the second truck, and the difficulty of seeing around these large vehicles is known to every driver. Yet if we assume that the hand signal was

visible, and likewise the highway markings indicating the approach of an intersection, we cannot say that they were any more apparent, and indeed we think not so much so, as was the red, swinging wigwag signal in Harvey v. Clark, to which must be added the train whistle. Negligent the unfortunate driver of the motorcycle may have been; but we do not think that reasonable-minded men, knowing the facts as shown by the evidence, should differ with the statement that no "heedless disregard of or indifference to consequences," no total lack of care, is shown. The driver did, in fact, show his regard for consequences by making a valiant, and nearly successful effort to avoid the result of his failure to see the hand signal and road signs by trying to cut to the right between the two trucks. We may paraphrase the quotation from Harvey v. Clark set out above, thus:

Is a jury finding of recklessness justified merely from proof that the injury to the passenger was caused by the failure of the driver to see a left-turn hand signal, given by the driver of the second truck in front of him by extending his hand and arm not over six inches from his cab; plus the driver's failure to see the highway signs advising of the approaching intersection, or the intersection itself? We have already indicated our conclusion that it is not. Brown v. Martin, 216 Iowa 1272, 248 N.W. 368; Roberts, admr. v. Koons, 230 Iowa 92, 296 N.W. 811; Paulson, admr. v. Hanson, 226 Iowa 858, 285 N.W. 189; and Wion v. Hayes, 220 Iowa 156, 261 N.W. 531, are somewhat in point.

IV. We have expressed our determination that defendant's motion for directed verdict should have been sustained as against each plaintiff; and that his motion for judgment notwithstanding verdict was likewise meritorious. Under R. C. P. 349, we may, under such circumstances, enter or direct the trial court to enter final judgment. The case was apparently fully tried, and there is no reason to think that any further witnesses or evidence would be available to plaintiffs upon another trial. Certainly they had every opportunity to present their case fully. On the other hand, the defendant was entitled first, to a peremptory instruction; and second, to a judgment notwithstanding the unfavorable verdicts rendered; and it would be an injustice to him,

1156.

under these circumstances, to require another trial. See Olson v. Hodges, supra.

The judgments rendered below are reversed and remanded, with directions to enter judgments for defendant against each plaintiff.—Reversed and remanded, with directions.

All Justices concur.