Virginia Hahn, appellant, v. Albert Strubel, appellee.

No. 48013.

(Reported in 52 N.W.2d 28)

MARCH 4, 1952.

Charles J. Pickett, of Waterloo, for appellant.

Reed & Byers, of Waterloo, for appellee.

MANTZ, J.—On August 23, 1948, at about 11:45 p.m., plaintiff-Virginia Hahn was riding as a guest with defendant in his automobile in the city of Waterloo, Iowa. While they were proceeding in a westerly direction on West Eleventh Street in said city and had crossed the Eleventh Street bridge over the Cedar River, the car which defendant was driving struck a car parked along the street curb between said bridge and Commercial Street in said city. As a result of said striking, the plaintiff suffered injuries which required hospitalization and medical treatment. Some of her injuries were of a permanent nature.

Plaintiff's claim is that the collision between defendant's car and the one struck was brought about by the reckless conduct of the defendant.

When all of the evidence had been received the defendant moved for a directed verdict on the ground the evidence was in-

sufficient to warrant a verdict for plaintiff. Said motion was sustained and plaintiff has appealed.

I. The question presented to us in plaintiff's appeal is whether there is sufficient evidence of reckless operation for submission to the jury. The determination of this question calls for an examination of the statute governing in such cases and the evidence which under the rule is to be favorably construed in plaintiff's behalf.

Plaintiff's claim is based upon what is commonly called the "guest statute". Section 321.494, Code of 1950. This statute as it now stands was enacted in 1927. Prior to that time the operator of an automobile was liable to a guest for damages arising out of the negligent operation of the vehicle by said operator.

The legislature in the Forty-second General Assembly by chapter 119 enacted the present statute, which provides that the owner or operator of an automobile should be liable to a guest for damages suffered by said guest by reason of the intoxication of or reckless operation of said automobile by such owner or operator.

This statute and its application has been before this court many times since its enactment. One of the early cases dealing with the present statute is that of Siesseger v. Puth, 1931, 213 Iowa 164, 182, 239 N.W. 46. In that case this court, speaking through Justice Grimm, made a full and elaborate analysis of the statute and its history, calling attention to the statutes on the same subject prior thereto and then proceeding to a discussion of the meaning of the term "reckless." The definition of such term as therein given has been followed in numerous later decisions. The definition of the term as laid down in that case, though at times elaborated upon, has not been improved upon. We there said that the legislature in making the change "intended the word 'reckless' to mean 'proceeding without heed of or concern for consequences.' To be 'reckless', one must be more than 'negligent'. Recklessness may include 'wilfulness' or 'wantonness', but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton'." And we further went on to hold that "to be reckless in contemplation of the statute * * * one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' "

The instant case involves a controversy not over the definition but over its application to the facts shown. The burden was upon the plaintiff to show her claim of recklessness. Whether or not the defendant in the operation of the automobile at the time plaintiff was injured was reckless was clearly a fact question. That plaintiff was severely injured at the time of the accident is not disputed.

In various decisions from this court where a charge of injuries caused by the recklessness of a driver was claimed, consideration was given to the various elements and conditions which may be considered in determining whether such charge of recklessness was shown. We have said that no hard and fast rule can be laid down, but that in its last analysis it is a fact question. In many cases excessive speed was shown in the face of protests by passengers; also certain physical conditions such as road and weather conditions; dangers and hazards, apparent or probable. Seldom are two cases alike as to facts. We have further said that it is not easy to define "reckless" in hard and fast terms, yet in the concrete it may be readily recognized. Skalla v. Daeges, 234 Iowa 1260, 15 N.W.2d 638; Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645; Peter v. Thomas, 231 Iowa 985, 2 N.W.2d 643. In the Skalla case the defendant was driving a powerful and speedy car at an estimated speed of eighty to ninety miles per hour. It was on a twenty-foot concrete highway. Approaching a steel girder bridge the car struck an abutment and one of the girders pierced the car injuring a guest; earlier the guest had protested to the driver that he was driving too fast. The road was straight and level. There was no meeting of cars. Defendant, when asked how the accident happened, stated that he was going down the road and his car got away from him; also that he was awake and his lights were on when he hit the bridge; on appeal defendant urged that the evidence did not justify the submission of the issue of recklessness to the jury. This court denied such claim and said that under the record there was the ultimate fact question and that the same was properly submitted to the jury. See also Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327; Neyens v. Gehl, 235 Iowa 115, 15 N.W.2d 888.

In the case of Mescher v. Brogan, supra, the sole question

presented was that of the recklessness of the driver of a car under the guest statute. Defendant claimed error in submitting the case to the jury. The court denied such plea and called attention to the record that the driver of the car was proceeding at a high rate of speed; that there were protests from the passengers; that the visibility was poor and other conditions existed. This court held that all such conditions when taken and considered together required a submission of the case to the jury, saying that such must be done if under the record different minds might reasonably reach different conclusions. On the question as to when it became the duty of the court to direct a verdict see Claussen v. Estate of Johnson, 224 Iowa 990, 278 N.W. 297.

In the late case of Schneider v. Parish, 242 Iowa 1147, 1152, 49 N.W.2d 535, on this issue of recklessness, this court (by Justice Thompson) held that under the guest statute the danger must have been known to a driver who acted in entire disregard of it, or the danger must have been so obvious and apparent the driver must have used no care at all in failing to observe it. Peter v. Thomas, supra, and White v. Center, 218 Iowa 1027, 254 N.W. 90, are cited. The writer of this opinion goes on to set forth the rules as laid down in Siesseger v. Puth, supra; also the language of this court in Hebert v. Allen, 241 Iowa 684, 41 N.W. 2d 240, and states that the application of such rules will often be troublesome. The writer, in a somewhat philosophical vein, goes on to state at page 1153: "But the law is not an exact science, and it is the problem of application of established rules to the varying fact situations which arise which makes it the difficult but fascinating study that it is."

II. With these rules in mind we turn to the record.

Plaintiff, Virginia Hahn, age twenty-three, and defendant, Albert Strubel, age twenty-four, had been dating together a few times prior to August 23, 1948. Plaintiff lived in Waterloo and was working as a waitress. Defendant lived near Waterloo and frequently came to the city. He had a couple of sisters there. About 8 p.m. defendant called for plaintiff and about two hours later they arrived in defendant's Ford car at a dine-and-dance hall called the Forum, in Waterloo. They were in the tavern barroom downstairs where they visited and drank some beer. Later, plain-

tiff, with an uncle, went upstairs to the dance floor and remained there about forty-five minutes, defendant remaining downstairs. During the time plaintiff was gone defendant learned that plaintiff had been previously married and when she came down the two had some words about her stay upstairs and defendant displayed some temper, announcing that "we are through" and offered plaintiff back her watch, which she declined to take, and he then threw it down on the bar. Thereupon she asked defendant to take her home and he agreed. Before leaving he said that it was getting late; that he wanted to see some person at the Electric Park and would go that way going home.

Defendant's car was a 1937 model Ford and there was evidence that the lights on it were poor. It had no muffler on it and in driving it made considerable noise. While at the Forum the car had been in a parking lot adjacent. When defendant got his car plaintiff got in. When he went out of the parking lot the motor was roaring. He drove from the lot onto Eleventh Street, one of the principal streets in Waterloo. He did not stop when entering it. Eleventh Street is partly industrial and partly residential. This street runs east and west and crosses the Cedar River on a bridge approximately three blocks long. He drove west. This street is approximately thirty-five to forty feet wide. The bridge is narrower and is raised some—where it meets the street—also there is a fall where it ends. The official speed limit on the bridge is fifteen miles per hour and to its west and where the accident took place the speed limit was twenty-five miles per hour. The east end of the bridge was about a block from the Forum. The bridge was floored with plank which made it rather rough. As the bridge is narrower than the street on the right-hand side going west there is a jog of a few feet where cars going in that direction must make a swerve to the left. As defendant drove his car upon the east end of the bridge he swerved sharply to the left and plaintiff was thrown so that she had to catch herself on the dash. Plaintiff asked defendant to slow down but he did not. At that time his car was going from forty to fifty miles per hour. There was some evidence from which it could be inferred that when defendant drove his car off the other end of the bridge he had increased its speed. While defendant's car was on

the bridge a car approached from the west; there was some dispute in the evidence as to whether or not its lights interfered with the vision of defendant to see ahead. As defendant's car proceeded west it crashed into a car which was parked at the curb 365 feet from the end of the bridge. Defendant's car, just a few feet from the point of the impact, swerved to defendant's left and struck the parked car pushing it ahead into another parked car, and then proceeded up the street. According to several eyewitnesses, defendant's car went up Eleventh Street with its wheels sliding or skidding, going about 150 feet, turning around, throwing plaintiff out and finally coming to a rest on the curb at the side of the street. In doing so it struck and broke a steel rod on a street-intersection sign on the next street west, Commercial Street. When defendant's car stopped its rear wheels were on the curbing and its front wheels on the sidewalk. The car which was struck had its front fender damaged and its side was pretty well mashed—its frame was broken and an axle sprung. In the collision, plaintiff's arm was severely lacerated with muscle cuts from one half to two thirds through the muscle. The surgeon stated that in his opinion some of her injuries were of a permanent nature.

Right after the accident, defendant told witnesses that he was "mad, was going too fast" and that his lights were "poor." Shortly following the accident a police car came; after investigation defendant was arrested for careless driving. The street at that point was from thirty-five to forty feet wide and paved. The curb is five to six inches high. The defendant's car, when it stopped, was facing east and was on the walk and the parking with its rear end about five feet from Commercial Street, the next street west. Defendant told witnesses that he had had an argument with plaintiff and that he was in a hurry.

The police records show that defendant pleaded guilty to careless driving. A Mr. Hutchinson, who was the owner of the car struck by defendant, said that he heard the crash and went down and saw where his car had been hit and pushed ahead into another car. He told of the damage to his car—side caved in, bumper pushed in, frame broken and had to be welded—that the

axle was sprung. Hutchinson talked to defendant. We quote from the record:

"Q. What did you hear the defendant say at that time concerning the accident? A. He and his passenger evidently had had some words, and I guess he was taking her home in a hurry. I got it to that effect. Q. Just as near as you can what the defendant said at that time. The substance of it if you can't remember the exact words. A. He said his lights were poor for one thing. I definitely remember that. Q. Did he say anything else about how the accident happened? A. He said the car loomed up in front of him just all at once and he didn't see it until he was right upon it."

Defendant told plaintiff's mother a few days after the accident: "What he said was that he was mad and he was driving like the dickens."

Witness Mercurio, operator of a grocery store just across the street from where the cars struck, had just closed and was looking out the window. He testified he heard the crash and "saw defendant's car go up street; when first seen, defendant's car was ten feet past the hit car. Q. Which way was it facing when it came to a stop? A. Facing back toward the store, toward Eleventh Street. Q. How far would you say it was from the place where the impact took place to where the defendant's car came to rest? A. It was a half block, probably 120 feet."

Witness heard defendant talk to another person: "He said something about he had to leave for the Army anyway. He was very indifferent."

Defendant testified that he had gone over the bridge many times and that he had two sisters living in Waterloo, one living on each side of the river and that he used the bridge; that he knew people parked along the street. He testified to the incident at the Forum about the watch and of plaintiff asking him to take her home. He told of getting into his car and starting out with plaintiff. He said: "There was no conversation between me and the plaintiff after we got into the car up to the time of the accident. She sat way over on the other side and I sat on my side. Q. Were you angry at that time? A. No, not too much."

He told about seeing the oncoming car when he was half way across the bridge; that when the two cars met the parked car was about fifty feet ahead. Defendant said that while going over the bridge he "slowed down." Plaintiff testified that after the accident when he came to see her he stated that he thought he was going "forty-five to fifty miles" per hour.

III. Here the court directed a verdict against the plaintiff. She was then a beneficiary of the rule that the evidence must be viewed in the light most favorable to her. Likewise she was entitled to every legitimate inference from the facts shown. In addition she was to have taken as established every fact which her evidence fairly tended to prove. The evidence should be given the "strongest interpretation in her favor." Baker v. Langan, 165 Iowa 346, 145 N.W. 513; Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; Degelau v. Wight, 114 Iowa 52, 86 N.W. 36. In addition she would be entitled "to the benefit of all the facts which the evidence offered by him tends to prove, giving them the most favorable construction of which they are fairly susceptible in support of his claim." Thompson v. Cudahy Packing Co., 171 Iowa 579, 581, 151 N.W. 470, 471. See also rule on such matters as set forth in Comfort v. Continental Cas. Co., 239 Iowa 1206, 34 N.W.2d 588. It is for the jury and not for the court to draw inferences from the evidence shown. Olson v. Southern Surety Co., 201 Iowa 1334, 208 N.W. 213. See also Russell v. Turner, 8 Cir., Iowa, 148 F.2d 562.

Thus we are confronted with the question as to whether or not the record is such that fair-minded persons seeking the truth could arrive at no other conclusion than that announced by the court. Can we say as a matter of law that plaintiff's evidence aided by the presumptions and interpretations of the rules as set forth above failed to substantiate her claim that the defendant in the operation of his automobile was reckless? We have gone over the record with care and are of the opinion that the court erred in directing a verdict. In so doing we must consider the whole affair as it happened that night.

It is quite evident that the defendant became angry while at the Forum; in fact, he admits it. (Whether he was justified in such attitude is beside the point.) After the accident he told

various persons that he was mad—"not too mad." The jury could properly infer that while at the tavern he drank beer, and also that such might have had some bearing on his mental attitude. He drove an automobile having poor lights and without a muffler—this last being in violation of the law. His brusque and bristling attitude with regard to plaintiff's watch was something which a jury could well consider as throwing light on his mental make-up. He drove without stopping from a private driveway into a main street of the city, making a turn against traffic, which could be properly considered a circumstance indicating and showing a heedless disregard for or indifference to the consequences or right or safety of plaintiff, his guest. The rate of speed and the movement of his automobile would be a matter for the jury to consider. He admits that he exceeded the speed limit in driving on that street. In so doing he violated the ordinance of the city. His sudden and abrupt swerving of his vehicle as he was about to enter the bridge and his disregard of protests by plaintiff as to his speed and manner of driving could properly be considered as showing lack of concern for and indifference to the rights or safety of plaintiff. He had traveled this street for years and knew or should have known of the hazards which might exist in the face of careless and indifferent driving. The jury could properly infer that defendant would be bound to know that owners of places of business and residences along the street made it a practice to park their vehicles close to the curb. His increase of speed as he approached the end of the bridge and continued ahead on Eleventh Street; his failure to see ahead a car parked directly in his path; the collision and the damage of the parked car and his own; that after striking the parked car defendant's car traveled onward about 150 feet striking a steel post bearing a street-intersection sign, whirling about, getting up on the curb, sidewalk and parking, and when it stopped it was headed in the direction from whence it came; the fact that plaintiff in this move was thrown out of the car and suffered severe injuries; the fact that the tire marks showed the skidding or sliding of the car were circumstances which a jury could properly consider on the question of speed and control of the car. They might also consider the car damage as bearing on that question. On the question of

speed of the car the jury could properly consider the physical facts as well as the testimony of witnesses on that point. Taking into consideration the above matters, and others in the record bearing thereon, we think a jury would be warranted in concluding that at and prior to the accident the defendant was operating his automobile in heedless disregard for or indifference to dangerous conditions, hazards or perils known to him, or which in the exercise of reasonable care should have been known to him, without care for the rights or safety of others.

In addition to the cases hereinbefore set forth on the subject of interpretation of the guest statute, as held by this court in Siesseger v. Puth, supra, see Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258; White v. Center, supra; Roberts v. Koons, 230 Iowa 92, 296 N.W. 811; Harvey v. Clark, 232 Iowa 729, 6 N.W.2d 144, 143 A. L. R. 1141; Popham v. Case, 223 Iowa 52, 271 N.W. 226; Olson v. Hodges, 236 Iowa 612, 19 N.W.2d 676; Davis v. Knight, 239 Iowa 1338, 35 N.W.2d 23.

While it may be assumed that standing alone single instances above set forth would not necessarily constitute recklessness, yet we think that when taken as a whole they fit into a pattern which would justify a finding that the defendant at the time in question was reckless within the meaning of the guest statute. Under the record we hold that it was for the jury to pass upon the question as to whether or not defendant was reckless as alleged by plaintiff.—Reversed and remanded.

All JUSTICES concur.