BERNICE ANDERSON, administratrix of estate of STANLEY ANDERSON, appellee, v. DON ELLIOTT, appellant.

No. 48229.

(Reported in 57 N.W.2d 792)

672 .

APRIL 8, 1953.

Bradshaw & Crawford, of Fort Dodge, for appellant.

Mitchell & Mitchell and Vincent Powers, all of Fort Dodge, for appellee.

THOMPSON, J.—Plaintiff's action is brought to recover damages alleged to have been caused by the wrongful death of her decedent occasioned by injuries received while a passenger in defendant's Buick convertible automobile on the evening of August 9, 1948. The trial court submitted the issues to a jury which returned a verdict for plaintiff. Defendant appeals from judgment rendered upon the verdict, and assigns error on the part of the trial court as follows: 1. In denying defendant's motion for a peremptory verdict made at the close of plaintiff's evidence and renewed at the close of all the evidence—the material reason why it is thought said motion should have been sustained being that there was insufficient evidence of recklessness of the defendant to support a jury finding in plaintiff's favor; 2, in admitting a photograph, plaintiff's Exhibit 4, into evidence; 3, in admitting a sketch, or plat, plaintiff's Exhibit 6, into evidence; 4, in admitting into evidence the testimony of the witness Dowd as to the speed of plaintiff's car at a point which defendant thinks was too remote from the scene of the accident; and 5, in refusing to give two requested instructions. These questions were each raised during the course of the trial, and by motion for new trial following the verdict. The pertinent

facts will be set forth in the several divisions of the opinion which follow.

 Cases under the guest statute are nearly always troublesome. They give rise to much difference of opinion among attorneys and have been known also to trouble the courts. The guest statute requires that the plaintiff make a jury question either upon the issue of recklessness or of intoxication of the driver of the automobile. The latter issue was taken out of the instant case by a special finding of the jury, which said the defendant was not intoxicated. So we have for determination as the major problem in the case, not whether the evidence proves defendant was guilty of recklessness, but whether it makes a sufficient showing so that the trial court was warranted in submitting the question to the jury and the jury was justified in finding defendant was reckless within the meaning of section 321.494 of the Code of 1946. It is not for the court to say whether he was actually reckless; its problem is, Does the record so clearly fail to show recklessness that there was nothing for the jury to consider? Unless this question is answered in the affirmative, there is a jury question. It must be kept in mind that the burden is upon the plaintiff to show recklessness. Also there is the rule, repeated ad infinitum, that the evidence must be taken in its aspect most favorable to the plaintiff when it is urged a verdict should have been directed against him. It is a question not only of whether there was a conflict in the evidence, but whether, even as to undisputed facts, they are such that reasonable minds might differ in interpreting them; specifically, in arriving at differing conclusions that the defendant was or was not reckless in his operation of his motor vehicle.

On the evening of August 9, 1948, sometime after nine o'clock, plaintiff's decedent, Stanley Anderson, and the defendant were riding in the latter's Buick convertible automobile, 1947 model, on Primary Highway No. 5 in Calhoun County. They had left Fort Dodge a short time before and were proceeding westward. The pavement was dry. Two miles south of the town of Pomeroy this highway takes a fairly wide curve to the north and proceeds in that direction into the town. Primary Highway No. 17 runs north and south through Calhoun County,

making a junction with No. 5 at the north end of its curve above-described, and continuing over the same pavement for some miles. At the point where No. 5 leaves its westward direction and enters the curve to the north above-described, its course, if continued straight west, would have brought it to an intersection with No. 17 in a distance of 340 feet, according to plaintiff's evidence. Although No. 5 turns north as described, there is a strip of pavement running straight west from the beginning of the curve, which intersects at right angles with No. 17 after covering the 340 feet above referred to. The two highways and this paved strip are each twenty feet wide and form a rough triangle, with No. 17 running north and south along the west side, No. 5 through its curve to the north and west forming the hypotenuse, and the paved strip running east and west along the south between No. 17 and the point where No. 5 turns to the northwest. Enclosed in the triangle, at the time of the accident, was a plot of ground described as being about an acre in extent. The highways on each side having been graded or filled, this triangular strip, described as "pie-shaped", lay several feet lower than the shoulders of the surrounding roads.

On the west side of Highway No. 17, immediately opposite the point where the strip of pavement running straight east to No. 5 intersects it, there is a gravel road extending on westward. There are stop signs on each side of No. 17 at this point. Plaintiff's evidence shows that there is a curve warning marker on the shoulder of No. 5, 742 feet east of the point of beginning of the curve to the northwest, and from 175 to 200 feet west of that is a sign showing the junction with No. 17. Defendant testified he ·had been over the highway many times and was thoroughly familiar with it. As his car approached the curve from the east, and while he was about one and one-quarter miles distant, he passed a truck driven by one Dowd. Dowd, an experienced driver, testified that defendant's car was traveling at eighty miles per hour. It was out of sight almost immediately and he could not say whether it changed speed after it went by him. There was a slight rise in the highway, described as a "knoll", about three quarters of a mile east of the point where No. 5 begins its northwest curve, which would make it about

one-half mile west of the point where defendant's car passed Dowd. The latter said that when he was "right on that knoll" he saw some beams of light in the air. These were from the Elliott car which had evidently reached the beginning of the curve, gone off the highway and rolled over so its lights pointed upward, momentarily at least, by the time Dowd had reached the top of the rise in the highway. Dowd estimates the elapsed time as a matter of seconds; perhaps a minute.

Further upon the question of speed, Wayne Hansen, who had driven from the west on the gravel road which intersects No. 17 at the same point where the paved strip of 340 feet before referred to reaches it from the east, had stopped his car at the stop sign on the west side of 17 just before the defendant's automobile approached the curve from the east on No. 5. He estimated the speed as sixty miles per hour "or better." His testimony is that as it reached the beginning of the curve the Elliott car turned a little to the right, "only he didn't turn as far as he should have to stay on the highway." The witness heard the sound of brakes "screeching" as the automobile turned to the right, then it went on over the shoulder and into the lower triangular area enclosed by Nos. 5 and 17 and the 340-foot paved strip connecting them across the south side of the triangle. The car went end over end off the shoulder and rolled over in the triangle before coming to a stop.

Other evidence for plaintiff is that there were skid or burned rubber marks on the paving on Highway No. 5 commencing 176 feet east of the point on the shoulder where indentations show the car left the highway. These burns were noticed and measured the next day. They extended 33 feet west from the point where they started. From there to the place where the car left the highway as shown by the shoulder marks, a distance of 143 feet, there were no signs the brakes had been applied. The skid marks began 53 feet east of the point where No. 5 turns northwest, and ended 20 feet east of the same point. From the point where the car left the shoulder to where it came to rest was, according to one of plaintiff's witnesses, 75 feet.

The defendant, as a witness for himself, says he was traveling about 60 to 65 miles per hour as he approached the

curve on No. 5. He denies he meant to follow the curve, but says it was his intention to go straight ahead on the paved 340-foot strip, stop at the stop sign on the east side of No. 17, turn there and go back. His explanation of the accident is that as they approached the curve, Anderson, who had been operating the radio in an attempt to find certain music he liked, suddenly looked up, saw the approaching turn in the highway, and seized either the wheel or the driver's arm, causing him to lose control of the car. It is the plaintiff's theory that Elliott meant to follow the curve and was going at such a rate of speed that he was unable to do so, or did not see it in time, although he was familiar with the highway. There is of course no one except Elliott who knows his real intention, but we think the jury was not bound to accept his version. He says at times he can remember nothing of what happened, although it is not clear just when he claims this "blacking out" commenced. But his first version was that Anderson seized the wheel; then that he seized his arm, and he supports this latter statement by saying the following day he found heavy bruises in the form of fingerprints on his right arm. A witness who saw his arm denies there were such prints. His contradictory statements as to the seizing of the wheel or his arm by Anderson, the fact he does not claim to remember slowing his speed in preparation for the stop he says he intended to make, and the inherent improbabilities of his story, leave the question of whether he meant to follow the curve for the jury's determination. Bombei v. Schafer, 242 Iowa 619, 625, 47 N.W.2d 842; Chidester v. Harlan, 180 Iowa 171, 187, 188, 159 N.W. 659.

■■■ I. We have stated the facts at some length because they are most important in this case as in all cases where we must determine whether there was a jury question on recklessness. It appears here that the jury, under the "facts most favorable to plaintiff" rule, could find the defendant drove his automobile at a high rate of speed westward on Primary Highway No. 5 as he approached the northwest curve, the road and the curve being well known to him, and the nearness of the change of direction being further made known to those who took the trouble to look by road signs, the curve itself being advertised by a marker 742 feet east of the point where the highway started

its northwest trend. It further might have found the defendant made no effort, or at least no sufficient or effective effort, to get his car under control so that he could follow the curve without disastrous results, and the accident and the death of plaintiff's decedent followed as a result of such want of care. Does this indicate a situation from which reasonable men might draw an inference of "no care, coupled with disregard for consequences?" We laid down this definition in the oft-quoted case of Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, and it is still the standard for measuring recklessness in this class of cases in Iowa. The question is not whether we find there was recklessness, but whether the jury had before it substantial evidence upon which it could so find. We think there was such evidence.

The situation here is very similar to that found in Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576. Indeed, it seems impossible to distinguish the facts. There, as here, the automobile approached a curve in the highway at a high rate of speed; and there, as here, it failed to negotiate the turn and left the road and crashed into some trees bordering, but some distance from, the pavement. If there was a fair inference of recklessness there, as we held, there is such inference here.

Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258, is another case in which the automobile was driven at a speed which prevented the driver from making a turn in the road. There was also in that case evidence of some statements by the driver, after the crash; but it was the holding of this court that, without these, there was evidence from which the jury was warranted in finding recklessness. We said at page 918 of 215 Iowa, page 259 of 247 N.W.:

"Proof of reckless operation in this case does not, therefore, rest alone upon the undenied admissions of the driver of the automobile. *Other testimony, coupled with the surroundings and circumstances of the unfortunate accident, are quite sufficient at this point.*" (Italics ours.)

Claussen v. Estate of Johnson, 224 Iowa 990, 278 N.W. 297, is another case in which high speed, under the existing conditions, was held to generate a jury question. Wright v. Mahaffa,

222 Iowa 872, 270 N.W. 402, Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645, and Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327, support the same holding. It is true that in the latter two cases there were other circumstances, such as statements showing indifference on the part of the driver or disregard of protests of the passengers, which strengthen the findings.

The defendant cites cases in which we have held there was not an issue for the jury. There are many others in which this court has said there was, or was not, sufficient showing of recklessness to require the submission. Since the question is so largely one of fact, no good purpose would be served by again analyzing all of these cases. For an exhaustive analysis of the numerous Iowa cases on the question we refer those who may be interested to Russell v. Turner, 56 F. Supp. 455, 459, in which Judge Henry Graven of the United States District Court, Northern District of Iowa, made a thorough study of our holdings.

It should be pointed out that, while we have said speed alone is not sufficient to show recklessness, this is one of those general statements which are often subject to important qualification. Thus, we said in Wright v. Mahaffa, supra, page 877 of 222 Iowa, page 405 of 270 N.W.: "It is contended that speed alone cannot constitute recklessness. While this may be true, it can hardly be said that speed under any and all circumstances cannot become recklessness."

In Thornbury v. Maley, supra, page 74 of 242 Iowa, page 579 of 45 N.W.2d, is this: "The question whether a particular speed is dangerous depends upon the surroundings and the attendant circumstances." See also Claussen v. Estate of Johnson, supra. The true rule is that, while a violation of the speed statute or high speed where no danger is reasonably to be apprehended is not in itself evidence of no care, with disregard of consequences, such speed may readily become such if danger may so be apprehended from its use. Here, the defendant's knowledge of the road and of the approaching curve should have given him reason to think that danger would follow if he did not slow down. It was a case where danger might have been found probable, rather than possible only, if the jury found the facts in accord with the evidence most favorable to plaintiff.

Since the defendant relies upon and quotes at length from Schneider v. Parish, 242 Iowa 1147, 49 N.W.2d 535, it is appropriate to note the factual distinction between that case and the one at bar. In the Schneider case the accident was caused by a truck which made a left turn at an intersection across the pavement in front of the motorcycle upon which the plaintiff was riding as a guest. It was held that while the driver of the motorcycle might have been negligent in failing to note the left-turn signal, the danger of another vehicle turning left and so blocking the paving was a possibility only. But in the instant case the curve was always there, and was known by defendant to be there. The danger from approaching it at an excessive speed was at least a probability, if not a certainty.

II. The second assignment of error, based upon the admission of the photograph, plaintiff's Exhibit 4, needs little comment. It was used in the examination of the witness Dowd and was identified by him as a picture of the approach to and beginning of the curve on Highway No. 5. It was not identified by the photographer as a true showing of the scene, but it is almost identical with Exhibit 3 which was admitted without objection. The difference between the two is that Exhibit 4 was taken from a point somewhat farther east on Highway No. 5, and so shows the curve sign referred to in the testimony. Of this sign Dowd said it was there on the night of August 9, 1948. Defendant's Exhibit C is not greatly different. In view of Exhibit 3, any error in the admission of 4 (which we do not hold) was without prejudice.

III. Plaintiff's witness Carley Burke testified he visited the scene of the accident on the following morning and made certain measurements. He had made a rough sketch, or plat, showing his measurements as given in his oral testimony. This was introduced in evidence over defendant's objection, and error is assigned thereon. There is no merit in the assignment. Defendant cites Roushar v. Dixon, 231 Iowa 993, 998, 2 N.W.2d 660. Here a plat offered by defendant had been excluded. We found no error "because several of the legends and marks on the plat were not made from the personal knowledge of the witness." Burke testified as to each of the measurements shown on the plat as having been made by him. See 32 C. J. S.,

680

Evidence, section 730, page 637; 20 Am. Jur., Evidence, section 739, page 616; Baker v. Zimmerman, 179 Iowa 272, 161 N.W. 479; Watson v. Boone Electric Co., 163 Iowa 316, 144 N.W. 350.

IV. The next assigned error is that the trial court erred in admitting the testimony of the witness Dowd as to the speed of the defendant's car approximately one and one-quarter miles east of the scene of the accident. Many of the same cases are cited on this point by both parties. The law undoubtedly is that the trial court has a considerable discretion in ruling upon whether the place of observation of speed is too remote to have any material bearing upon the question at issue. Tobin v. Van Orsdol, 241 Iowa 1331, 45 N.W.2d 239; Neyens v. Gehl, 235 Iowa 115, 15 N.W.2d 888; Roushar v. Dixon, supra; Thomas v. Charter, 224 Iowa 1278, 278 N.W. 920; Waldman v. Sanders Motor Co., 214 Iowa 1139, 243 N.W. 555. See also 9 Blashfield, Cyclopedia of Automobile Law and Practice, section 6235.

In the case at bar Dowd said the defendant was traveling eighty miles per hour when he passed him about one and one-quarter miles east of the curve; that he was out of sight almost immediately and he could not tell whether the defendant slowed down or not. This, it is true, is somewhat remote, and yet we cannot say the trial court abused its discretion in admitting it. Standing by itself it would perhaps have little probative value, but there is more. Not only did the witness Hansen estimate defendant was traveling at a speed of sixty miles per hour, "or better", as he reached the curve, and the defendant himself placed it at sixty to sixty-five (with the statement that while he did not remember, he would naturally slow down in preparation for the stop he said he intended to make), but there is most significant testimony from Dowd bearing further upon speed and tending strongly to show there was no material slackening of the speed of defendant's automobile after it passed him. He says that as he reached a point three quarters of a mile from the accident scene, and thus after he had traveled one-half mile from the point where defendant passed him, he saw the beams from the lights of the car sweeping through the air as it rolled over. This means that, while Dowd with his truck was traveling one-half mile, defendant covered one and one-quarter miles; and while we are not told the speed at which Dowd was

driving, he did estimate the time elapsed from the passing of defendant's car until he saw the beams of light sweep through the sky ahead as a "matter of seconds. Maybe even a minute." This means, taking here the aspect most favorable to the defendant upon the question of speed, that Dowd had consumed one minute in covering the approximately one-half mile from the point where defendant passed him to the place from which he observed the beams cross the sky. In the same time defendant had traveled two and one-half times as far. Dowd's speed at the rate of one-half mile per minute would have been thirty miles per hour, while defendant must have traveled at the rate of seventy-five. While Dowd's testimony as to speed and distance was necessarily to some extent estimates, it was such as the jury had a right to believe. The court did not abuse its discretion in admitting his testimony.

V. The final error assigned concerns the refusal of the court to give defendant's requested Instructions Nos. 2 and 4. No exceptions were taken to the instructions given by the court, and while there is some argument here that they were not complete and the court did not instruct upon material issues, we think it was the duty of defendant to call these claimed errors to the court's attention by proper exceptions. We turn, therefore, to the two requested instructions which were not given, and as to which exceptions were properly preserved. Requested Instruction No. 2 was as follows:

"You are instructed there is no evidence the defendant was reckless in attempting to make a turn to the right on Highway 5, the evidence showing conclusively the defendant intended to continue in a straight westerly direction on said highway and the mere fact that a curve was constructed at or near the scene of the accident will raise no presumption to the plaintiff of an intent to turn on the part of a person traversing at or near said curve."

It will be noted the instruction states the evidence showed conclusively defendant intended to continue in a straight westerly line on the highway, which means that there was no evidence he meant to follow the curve. We have previously held against this contention in our discussion of the evidence in

Division I. It would, therefore, have been error to give the instruction as requested.

Requested Instruction No. 4 is set out herewith:

"You are instructed that it is the law of this state that a defendant must be found negligent before he is reckless. That the term recklessness contemplates an utter disregard for the consequences of a particular act. That in making this determination you must consider that a person in his conduct need only guard against probabilities and that if at the time and place in question, the defendant met this standard of care and that the acts complained of are only possibilities you must return a verdict for the defendant."

The claimed error in refusing to give this instruction is not argued, except by the statement that "we are citing no authorities for the failure to incorporate our requested instruction number 4 as the law governing this instruction is set out earlier in our brief." We are not advised where this law is set out and so are not required to consider the alleged error. However, in passing it may be pointed out that Instruction No. 10 given by the court seems to place a heavier burden upon the plaintiff than does defendant's requested Instruction No. 4. After telling them that to be reckless, one must be more than negligent, and that recklessness implies an absence of all care coupled with disregard of consequences, the court proceeds:

"Recklessness, within the meaning of the statute, signifies an absence of all care, coupled with such a state of mind of the driver that *he disregards the consequences which are obvious and apparent and which would naturally follow from the acts or failure to act.*" (Italics ours.)

Defendant's instruction makes it reckless to fail to guard against probabilities; the court's instruction requires that the consequences be "obvious and apparent", a phrasing more favorable to defendant and less favorable to plaintiff than the one defendant asked. We find no error.—Affirmed.

All JUSTICES concur.