EARL L. WHITING, appellant, v. BEN STEPHAS, administrator, and BLANCHE HUBBARD, administratrix, of estate of Ernest J. Hubbard, deceased, appellees.

No. 48833.

(Reported in 74 N.W.2d 228)

JANUARY 10, 1956.

J. I. Hossack and A. D. Avery, both of Spencer, for appellant.

Herrick, Langdon & Sidney, of Des Moines, and Cornwall & Cornwall and Baldwin & Hoover, all of Spencer, for appellees.

PETERSON, J.—This is an action at law by plaintiff against the administrators of the estate of Ernest J. Hubbard, deceased. Plaintiff was a guest in the automobile of Hubbard on the evening of August 8 and early morning of August 9, 1953. The automobile was wrecked on a bridge immediately north of Merrill, Iowa, and Hubbard and another guest, Kilmer, lost their lives. Plaintiff was seriously injured. He alleges reckless driving on the part of Hubbard. A motion for a directed verdict was sustained in favor of defendants, and plaintiff has appealed.

Earl L. Whiting, the plaintiff, is a painter and lives at Spencer, Iowa. After his day's work on August 8, 1953, he came to a tavern known as the "Grand" in Spencer at about eight o'clock and met George Kilmer, whom he knew. Kilmer introduced him to Ernest J. Hubbard. Neither the plaintiff nor Kilmer owned automobiles and neither had a driver's license. Hubbard was the owner of a 1947 Chevrolet Tudor Coupe. He invited both of them to take a ride with him. Plaintiff sat in the rear seat and Hubbard and Kilmer in the front seat, with Hubbard driving. At first they drove around Spencer for some time and then they drove to LeMars. Between Spencer and LeMars plaintiff fell asleep, but when they came to LeMars he was awakened and all three went to a restaurant for coffee. While they were in the restaurant gas was placed in the car, and it was serviced at an adjoining service station.

Sometime after midnight the parties all entered the car again, plaintiff sitting in the rear seat, and the other two parties in the front seat, with Hubbard driving.

At this point a disinterested witness stated that he heard Hubbard say to plaintiff and Kilmer that he would get them to Sioux City in twenty minutes. Sioux City is between twenty and twenty-five miles from LeMars. About six miles south of LeMars is a bridge which is known as the Merrill Bridge. It is about one-fourth mile north of the town of Merrill, on U. S. Highway No. 75. The bridge is twenty feet wide and on each side are heavy steel girders about eight feet high and fourteen inches in width. It is approximately one hundred and sixty feet in length. In connection with the approach to the bridge there is a curve to the right. The turn starts approximately one hundred and eighty-five feet north of the bridge and swings toward the west. At said point it is necessary that a car be turned toward the right in order to follow the paving across the bridge. On the right-hand side of the road going south, about six feet from the paving and nine hundred and ten feet north of the bridge is a sign post. It has two signs on it. One is a sign about eighteen inches square, having upon it a curved arrow, indicating a curve to the right. The other is a "20 M P H" sign. Eight hundred and ten feet north of the bridge is a "narrow

bridge" sign. In front of the bridge railing on the left-hand side of the road ·was a four-inch square creosoted post with three red reflectors on it, about two inches apart.

There were no eyewitnesses as to the actual occurrence. After leaving LeMars the plaintiff again fell asleep in the back seat of the car and he is unable to tell what happened. He was very seriously injured and did not regain consciousness until about two weeks afterward in a Spencer hospital. The physical facts, however, show that the automobile did not make the turn one hundred eighty-five feet north of the Merrill Bridge. Instead of following the right-hand pathway of travel across the bridge it proceeded in a straight course from the point of the curve in the road, and first struck the post carrying the reflectors, on the left side of the bridge, and knocked same aside. It then ran up the rather steep 8-foot bridge railing support to the top of the railing and proceeded along the top for a distance of thirty-three feet. The car then fell off the bridge into the river with part of the car in the water and part of it on the river bank. The automobile, weighing three thousand pounds, became dead weight upon striking the bridge banister and was propelled thereafter by the force of previous speed. In this process of travel one part of the appliance under the car was torn loose and became attached to the bridge support. There were marks on the bridge railing support and top, showing the pathway of travel of the automobile. The motor was thrown out of the car and was found at another spot from where the car was found. There were no skid marks on the paving to indicate any attempt on the part of the driver to follow the curve.

Between ten and fifteen minutes after Hubbard left the gasoline station at LeMars, six miles away, a trucker drove into the station and said that an accident had happened on the Merrill Bridge and the trucker proceeded to use the telephone, presumably calling the sheriff. The trucker was not a witness in the case so we are unable to say when he arrived at the scene of accident and how much he saw, but the time of the Hubbard car proceeding to the bridge and the truck proceeding back from the bridge, a total distance of twelve miles, is very short. This is not conclusive, but it has a bearing upon the element of speed. When the

sheriff and others arrived on the scene they removed Mr. Hubbard and Mr. Kilmer from the car. Mr. Hubbard had already died and Mr. Kilmer died later. They had difficulty in removing the plaintiff because part of the car was resting on him. He was taken to the hospital. From the descriptions of the several witnesses who came to the scene promptly the Hubbard car was a complete wreck.

Prior to 1927 the liability as between operators of motor vehicles and guests was under the same general negligence rule as pertained to all other persons injured through operation of automobiles. However, the Forty-second General Assembly adopted the provision of our statute, which is known as "Guest statute", and which is section 321.494 of the Code. Under said statute the owners and operators of motor vehicles were exempted from liability as to guests with two exceptions. First: if the driver was under the influence of intoxicating liquor. Second: the reckless operation of such motor vehicle by the driver.

In this case appellant is not charging that the first exception is effective, although there had been some drinking of beer by the driver of the automobile prior to the fatal ride. The charge of appellant is reckless operation of the motor vehicle by Ernest J. Hubbard.

Many cases involving this statute have been before the court in the more than quarter century since it was adopted. In this modern day of increasing motor-vehicle tragedies, recklessness seems to become more and more the basis of cases.

The question is not for us to decide as to the matter of whether or not there was recklessness involved. That is a question for the jury. However, it is the responsibility of a trial court, and now of this court, to decide whether or not the evidence is so substantial that such question should be submitted to the jury. From the circumstances, and the physical facts and other supporting evidence heretofore outlined, a jury could find speed. Adding to this the many attendant circumstances, also heretofore shown, they could find recklessness. We hold there is sufficient evidence for submission to the jury.

Counsel for both appellant and appellees cite the well-known case in this field of Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W.

46, 54. This case was decided in 1931, which was a comparatively short time after adoption of chapter 119 of the Forty-second General Assembly. In that case a definition of "reckless" was given and said definition has been the one approved by this court in many reckless driving cases decided since that time. The definition is as follows:

"In light of the circumstances under which said chapter 119 was passed, it is apparent, we think, that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' "

In connection with consideration of the fact that the trial court directed a verdict in favor of defendants it is elementary and has been held many times by this court that the evidence must be viewed in the light most favorable to plaintiff. As to this rule a strong supporting statement appears in Hahn v. Strubel, 243 Iowa 438, 446, 52 N.W.2d 28, 32:

"Here the court directed a verdict against the plaintiff. She was then a beneficiary of the rule that the evidence must be viewed in the light most favorable to her. Likewise she was entitled to every legitimate inference from the facts shown. In addition she was to have taken as established every fact which her evidence fairly tended to prove. The evidence should be given the 'strongest interpretation in her favor.' Baker v. Langan, 165 Iowa 346, 145 N.W. 513; Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; Degelau v. Wight, 114 Iowa 52, 86 N.W. 36. In addition she would be entitled 'to the benefit of all the facts which the evidence offered by him tends to prove, giving them the most favorable construction of which they are fairly susceptible in support of his claim.' Thompson v. Cudahy Packing Co., 171 Iowa 579, 581, 151 N.W. 470, 471. See also rule on such matters as set forth in Comfort v. Continental Cas. Co., 239 Iowa 1206, 34 N.W.2d 588. It is for the jury and not for

the court to draw inferences from the evidence shown. Olson v. Southern Surety Co., 201 Iowa 1334, 208 N.W. 213. See also Russell v. Turner, 8 Cir., Iowa, 148 F.2d 562."

In arriving at our decision there are two matters which should have consideration: presence of speed, and the fact of the evidence being mostly circumstantial.

The question of speed has been under discussion in all of the reckless driving cases. The general statement has been that speed alone is not sufficient to show recklessness. However, this general statement is subject to qualification depending on the circumstances of each case.

In Anderson v. Elliott, 244 Iowa 670, 678, 57 N.W.2d 792, 796, it was stated: "It should be pointed out that, while we have said speed alone is not sufficient to show recklessness, this is one of those general statements which are often subject to important qualification. Thus, we said in Wright v. Mahaffa, supra, page 877 of 222 Iowa, page 405 of 270 N.W.: 'It is contended that speed alone cannot constitute recklessness. While this may be true, it can hardly be said that speed under any and all circumstances cannot become recklessness.' "

The question of speed alone, in practically all of the reckless driving cases, is seldom of controlling significance. We find present in all of the cases other circumstances which enter into the question of submission of the case to a jury.

In view of the fact that there were no eyewitnesses to the actual occurrence at the bridge it becomes necessary to take into consideration the matter of the circumstances surrounding the situation.

Evidence of this type is analyzed in the case of Shinofield v. Curtis, 245 Iowa 1352, 1357, 66 N.W.2d 465, 468, where the court stated as follows: "Her case rests largely on circumstantial evidence. We are committed to the rule that in such a case the evidence must be such as to make plaintiff's theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. It is not necessary that the testimony be so clear as to exclude every other possible theory [citing cases]."

This rule is correct, and applies to this case for the reason that we hold herein that plaintiff's theory of causation is "reasonably probable" to the extent that it merits submission to the jury.

In a study of reckless driving cases through the years it seems that there are no two state of facts exactly alike. This case is different in some respects from other cases which have been before this court. However, it has many similarities, and several previous decisions are of assistance in deciding whether or not the case should be submitted to the jury.

This court recently decided the case of Anderson v. Elliott, supra. In this case defendant was driving westerly on primary Highway No. 5 in Calhoun County. South of the Town of Pomeroy was a curve to the right by which connection could be made with Highway No. 17, running north into said town. There is evidence of speed together with road signs and when defendant attempted to go around the curve his car left the pavement and ran into a rather deep depression between the roads, and the guest was killed. In the case before us Hubbard ran his car up the bridge railing and along such railing, when it fell into the river. In Anderson v. Elliott, supra, the case was submitted to the jury and this court sustained such submission.

The case of Thornbury v. Maley, 242 Iowa 70, 74, 45 N.W.2d 576, also has some similarity to this case and the decision in said case is helpful to us in arriving at a conclusion herein. Under the facts of said case the driver was driving on Highway No. 18 between Ventura and Clear Lake, Iowa. He came to a sharp curve in the road where there was a road sign indicating a turn. However, his automobile failed to make the turn and left the highway and struck some trees and the driver and plaintiff's intestate were killed. There was eyewitness evidence of speed in the case, together with the other circumstances. In the case under consideration the question of whether or not the jury decides as to excessive speed depends on circumstances and physical facts, and such other evidence as is shown in the record. The circumstance of road signs is present in both cases, except in this case there were more road signs than in the above cited case. The trial court submitted the case to the jury and the jury

held for plaintiff. Appellant contended there was not sufficient evidence to submit the case to the jury on the basis of reckless driving. This court sustained the trial court.

The case of Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258, is a case somewhat similar to this case. In said case there was also a bridge involved, together with a double turn. The turn started before arriving at the bridge and then again turned after leaving the bridge. The driver had crossed the bridge and failed to make the second turn, driving into a ditch, and plaintiff's intestate was killed. Speed and roadway circumstances were involved in said case, the same as in this case. The court made some significant statements on page 918 of 215 Iowa, page 259 of 247 N.W., which have a bearing upon this case, as follows: "Something more is shown in this case than mere speed. Seventy miles per hour in the nighttime upon a gravel highway would be more or less hazardous at the best. When considered in the light of the surroundings and circumstances shown in this case, we think the evidence quite sufficient to sustain the verdict against the driver of the automobile. The course of the highway, as it approached the bridge, necessitated an abrupt turn to the right and a more or less abrupt turn to the left after making the crossing, which is a circumstance to be considered. It is obvious from the testimony that the driver of the automobile lost control thereof because the speed at which he was driving was so great that he was unable to maintain control of the car and guide it across the bridge and make the necessary turn to the left. It may be that the speed of the car was less than seventy miles per hour, but when considered in the light of the facts and circumstances, was so great as to constitute reckless operation within the meaning of the statute. Proof of reckless operation in this case does not, therefore, rest alone upon the undenied admissions of the driver of the automobile. Other testimony, coupled with the surroundings and circumstances of the unfortunate accident, are quite sufficient at this point."

In the argument of counsel for appellees they only cite three cases on the broad question of recklessness. They have other auxiliary brief points, some of which we have heretofore considered, and others are not of themselves decisive as to the one

fundamental legal question involved, and an analysis of said cases under the auxiliary brief points would be of no value in our conclusion as to reversal.

The three cases cited by counsel for appellees and urged in their argument are Siesseger v. Puth, supra, Scott v. Hansen, 228 Iowa 37, 289 N.W. 710, and Shenkle v. Mains, 216 Iowa 1324, 247 N.W. 635. The Siesseger case supports our position in view of the definition of recklessness, which we have heretofore quoted. It is true that the case was reversed, but the reversal was on the wording of an instruction, and not on the merits of the question of recklessness.

The case of Scott v. Hansen, supra, is not comparable to this case. After defendant Hansen saw some cows on the road ahead, he reduced his speed. He started his slowing process three hundred fifty-four feet from the point where he hit the cow which caused the accident. The court held that under such circumstances the action of defendant could not be considered reckless. In other words he tried to control the automobile, and it was clear that there was no reckless indifference as to the rights of others.

The case of Shenkle v. Mains, supra, can also be distinguished from this case. It is clearly a case of negligence and not reckless driving. With reference to this case, counsel for appellees emphasize the fact that the court said that reckless driving is an exceptional ground for submission to the jury, and that there is an implication of infrequency of application thereof. With reference to this statement we must take into consideration the fact of the rapidly changing times and conditions. The Shenkle case was decided twenty-two years ago and the number of motor vehicles and the number of accidents have increased many fold during these years. It, therefore, becomes necessary to analyze each case on the basis of present circumstances, as such cases come before the court.

The judgment based on the order sustaining the motion of defendants for a directed verdict is reversed and the case remanded.—Reversed and remanded.

All JUSTICES concur.