ADELL (ODELL) E. TYRRELL, Appellee, v. SKELLY OIL COMPANY et al., Appellants.

No. 43497.

JANUARY 12, 1937.

REHEARING DENIED JUNE 18, 1937.

1258

 ┣━━

Messer & Nolan, for appellee.

Grimm, Elliott, Shuttleworth & Ingersoll, for appellants.

RICHARDS, C. J.—On August 17, 1934, plaintiff was traveling westerly on a paved highway, as a gratuitous guest in a Plymouth automobile owned and being driven by one Powers. When a point was reached seven miles west of Webster City the left rear wheel became detached. The car continued its course for a short distance and then leaving the paving turned over two or three times, with resulting physical injuries to plaintiff for which she seeks damages in this action. The trial in the district court resulted in a verdict and judgment for plaintiff from which defendants have taken this appeal. Plaintiff's case is founded on the claim that negligence of defendants resulted in the wheel coming off the car and hence was the proximate cause of plaintiff's injuries. As defendants deny the sufficiency of the evidence to generate a jury question as to whether defendants were negligent, we will proceed first to summarize the salient matters of evidence relied on by plaintiff to establish such negligence.

It is conceded that at 8 or 8:30 p. m. on August 15, 1934, two days before the accident, Powers was driving this same automobile in Iowa City. On Jefferson Street the left rear tire went flat. Powers parked the car upon the street. Not quite two blocks distant from the place of such parking defendant Skelly Oil Company was operating a service station whereat defendant Du Pre was an employee. Soon after the car was parked Powers directed Du Pre to repair the flat tire and to remove the two front wheel tires and replace them with new tires purchased by Powers from defendants as part of the transaction. The repair work and the re-tiring of the front wheels were all performed by Du Pre at the service station later during the same evening. Preliminary thereto, and in order to have the car at the station where the work could be done, Du Pre came to the Powers car, where parked, removed the left rear wheel on which was the flat tire, and substituted in its place the car's spare wheel that had an inflated tire. The car was so designed and constructed that each rear wheel after being slipped on the hub, was then secured

to the brake drum with five threaded lug bolts. There was an opening in the wheel for each bolt, and correspondingly there was for each bolt a threaded hole in the brake drum into which the threaded end of the bolt was intended to be turned. These five sets of threads constituted the only device to avoid the wheel becoming detached in the operation of the car. The bolts were approximately seven-sixteenths of an inch in diameter and two and three-eighths inches in length, with a hexagonal head of larger diameter. Powers testified that Du Pre, in putting on the spare wheel before taking the car to the service station, screwed in one of the bolts with his fingers, then gave it a turn or so but not tight with his pliers, without using any wrench to tighten this bolt, and that Du Pre slipped four other bolts into their holes in the wheel but without turning them at all into the threads of the brake drum. Powers also testified that he asked Du Pre whether he was leaving the wheel that way, with only one bolt, and that Du Pre replied in substance that so doing would not hurt anything in taking the car just over to the service station. Powers' testimony respecting the turning of but one bolt and the conversation just mentioned is denied in Du Pre's testimony. Later in the evening Powers came to the service station. He testified that he was told by Du Pre that the car was ready to go. Powers drove the car from the station and during the night left it parked on a street in Iowa City. On the following morning he drove the car to Ft. Dodge. During the forenoon of the day thereafter he drove back to Iowa City, and in the afternoon started from Iowa City on the trip which ended seven miles west of Webster City, as above related. Following the accident the wrecked car was lying on its top, south of the paving, and the detached left rear wheel had come to rest leaning against the fence north of the paving, and about forty or fifty feet west of the car's location. The wheel was rolled back to the car, and plaintiff's witnesses describe what they observed during the process of reattaching the wheel. They say that after the hub cap was removed they found that there were either three or four lug bolts in the wheel. One of these was in such condition that it could not be turned into the threads in the brake drum and was discarded, and one of the three or four bolts was broken off. The bolts, except the broken one, were lying loose inside the space enclosed by the hub cap. Powers also testified that the wheel and tire which came off the car at the time of the

accident was the wheel and tire that was placed on the left rear axle of the car by Mr. Du Pre *on the evening* of August 15, 1934. It was Du Pre who did all the work on the car. Whether witness Powers was intending to identify the wheel and tire that came off as the one that was placed on the left rear axle by Du Pre at Jefferson Street or at the service station does not appear entirely clear as he includes the whole evening in his description of the wheel that was put on the car. This is rendered the more indefinite in another portion of the testimony of the same witness wherein he stated he did not know whether the spare tire that was put on before the car was taken to the service station was the tire that was ultimately left on the left rear wheel. It is the evidence of Du Pre that at the service station the wheel that had the flat tire on Jefferson Street was put back on as the left rear axle equipped with a tire taken from a front wheel, and the spare wheel returned to its place on the car.

Additional reference to plaintiff's evidence will be made later in this opinion, but sufficient of the features stressed by plaintiff we have now set out to render clearly understandable plaintiff's proposition respecting defendant's alleged negligence. That proposition is that from the evidence the jury could reasonably find that Du Pre, either did not do anything more with the lug bolts on the left rear wheel when he had the car at the station, or else, if he did, he did so in such a negligent manner that the wheel did not remain attached to the car.

In resistance to such proposition defendants point out that the only witnesses having any personal knowledge of the manner in which the work was done at the service station, including the attaching of the left rear wheel, were Du Pre and the other two employees. From their testimony no negligence can be inferred. So, say defendants, the only remaining evidence in the record on which plaintiff can rely to establish negligence is entirely circumstantial in character. Defendants then cite the Iowa rule that pertains to the burden or duty that rests on a plaintiff when seeking to prove negligence by circumstantial evidence. Under this rule, although a plaintiff may prove such circumstances as to raise a presumption of negligence, and although such presumption may arise from the nature of the cause or manner of the injury (Cahill v. Ill. C. Ry., 148 Iowa 241, 125 N. W. 331, 28 L. R. A. (N. S.) 1121), yet we have held that "A theory cannot be said to be established by circumstantial evidence, even in a civil

action, unless the facts relied upon are of such a nature and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory." Asbach v. Chicago, B. & Q. Ry., 74 Iowa 248, 37 N. W. 182, 183. In Schmidt v. Hayden, 205 Iowa 1369, 1371, 219 N. W. 399, 400, Mr. Justice Albert speaking for the court stated the rule as follows:

"Where it is sought to establish by circumstantial evidence that the alleged negligence is the proximate cause of the injury, such evidence must exclude every other reasonable hypothesis." See, also, Reimer v. Musel, 217 Iowa 377, 251 N. W. 863, and Westenburg v. Johnson, 221 Iowa 134, 264 N. W. 18.

A different theory or hypothesis than plaintiff's as to the proximate cause of her injuries is not foreign to the record before us. It is clearly suggested by the following testimony of Du Pre: that when he removed the hub cap from the left rear wheel on Jefferson Street, he discovered that there were but three lug bolts, and that on two of these bolts the threads showed considerable wear, and that he discovered defective threads in a hole in the brake drum; that when Powers' attention was called to these matters he said it was all right, that he had been driving the car that way, but agreed that Du Pre should try to procure new bolts; that Du Pre made an effort so to do but without success because the Plymouth garage was closed for the night; that Powers was informed that there were only the three bolts holding the left rear wheel when he drove the car from the station, and said he would attend to it in the morning. Two other witnesses testified they observed there were but three lug bolts in the wheel in question. While the testimony of these witnesses is controverted by that of Powers, yet the suggestion therein contained that existing defects and weaknesses in this piece of machinery resulted in the wheel coming off after nearly 600 miles driving, finds considerable support in the fair and reasonable deductions from the above related observations made by plaintiff's witnesses when the hub cap was removed after the accident. Additional thereto there are in the record the following matters, of perhaps greater weight, established by the testimony of plaintiff's witnesses. At the time of the accident the car had been

driven in excess of 70,000 miles. Its second motor had been installed in the original chassis. In the spring of 1934 Powers took the car to a garage in Fort Dodge for repair work. It was found that the left rear brake drum was in bad condition on the inside and had to be put on a lathe. The repairman, plaintiff's witness, testified in part as follows: "I put the drum on a new axle shaft and then chucked the axle shaft in the lathe and turned the inside of it out. I didn't run the shaft clear back in and it left a ridge on the back side in there that is the original size. The balance of it is larger in diameter than that is. It is an expanding brake." This witness also found a threaded hole in the drum in which the threads had "sort of bolted in there, evidently crooked or cross-threaded and damaged the threads to a certain extent." He ran a "top" through so as to clean out what was left of the threads, leaving the hole in what he thought was a satisfactory condition. At the time of these repairs the car had been driven 30,000 miles. After these repairs the car had been driven in excess of an additional 40,000 miles up to the time of the accident. After Powers left defendants' service station on the evening of August 15, the car was driven nearly 600 miles, over both paved and graveled roads, before the wheel came off the car.

Plaintiff's effort to prove negligence depending, as it does, on inferences to be drawn from circumstantial evidence, we are unable to affirm that she successfully carried the burden imposed by the Iowa rule above discussed. An attempted analysis, necessitating repetition of much already stated concerning the record, does not seem necessary. It suffices to say that we think that a careful consideration of plaintiff's own evidence, in a light as favorable to plaintiff as is reasonably possible, and apart from defendants' showing, makes as fairly reasonable the hypothesis that the existing defects and weaknesses of this much traveled car resulted in the wheel becoming detached as the theory advanced by plaintiff. Such a state of the record does not impose on defendants the burden of disproving any presumption of negligence that might arise were plaintiff's theory the only fairly reasonable hypothesis as to the proximate cause of plaintiff's injuries. The fact that plaintiff's evidence might also be consistent with, or might make fairly reasonable the theory that defendants were in some manner negligent in attaching the wheel, does not eliminate the other hypothesis nor its reasonable-

ness. In this state of the record the Iowa rule does not permit the jury to merely conjecture how the accident happened. Defendants' motion for a directed verdict should have been sustained because the state of the evidence was such that the question of defendants' alleged negligence should not have been submitted to the jury. The conclusion obviates necessity of discussing defendants' further contention that plaintiff, being a stranger to the transaction between Powers and defendants, had no cause of action against the latter, such as she attempts to pursue herein. Plaintiff's motion to affirm judgment below on ground that the assignments of error fail to comply with Rule 30 is overruled.

For the reason appearing above the case is reversed.— Reversed.

PARSONS, C. J., and HAMILTON, STIGER, KINTZINGER, and DONEGAN, JJ., concur.