GOLDA CLAUSSEN, Administratrix, Appellee, v. ESTATE OF W. B. JOHNSON and RUTH E. JOHNSON, Administratrix, Appellants.

GRACE CECIL, Administratrix, Appellee, v. RUTH E. JOHNSON, Administratrix, Appellant.

GRACE H. THORNSTAD, Administratrix, Appellee, v. RUTH E. JOHNSON, Administratrix, Appellant.

No. 44019.

MARCH 15, 1938.

REHEARING DENIED JUNE 24, 1938.

992

Roy E. Havens and Mitchell & Johnson, for appellant.

William P. Welch, J. A. Murray, and Raymond Klass, for appellees.

RICHARDS, J.—On March 21, 1936, at about 7:30 p. m., a Ford automobile being driven south on combined Primary Highways 30 and 75 collided, first with a nonmoving trailer attached to a Dodge automobile, and then with a truck that was traveling north. This occurrence was at a point about 7 miles south of Missouri Valley. The highway was straight and level for miles in either direction. The four occupants of the Ford lost their lives in this catastrophe so immediately upon its happening that none spoke afterwards. One of the travelers in the Ford was W. B. Johnson, owner of the car. Against his estate a claim was filed by the administratrix of the estate of each of the three other decedents. In each claim it was alleged that the claimant's decedent was riding in the Ford as Johnson's guest, and that the decedent lost his or her life because of Johnson's reckless operation of the motor vehicle. There was a trial upon the claim filed by the administratrix of the estate of Andy L. Claussen, under stipulations that the two other claims be considered as tried upon the same record. Following a jury verdict for the administratrix upon the Claussen claim, each of the three claims was allowed, agreeably to the stipulations. The administratrix of the W. B. Johnson estate has appealed from the allowance of each of the three claims.

■ ■ ■ The first question presented is whether there was evidence that warranted submitting to the jury the question whether Johnson was driving the Ford at the time of the accident. Bearing on that matter, it is undisputed that Johnson owned the car and frequently had been driving it for more than a year. At a few minutes after 7 o'clock, on this evening of March 21, the Ford, headed west, with Johnson sitting behind the wheel, was standing in front of the home where decedents Claussen and Cecil resided, about two blocks from the residence of Johnson in the city of Logan. Sitting in the front seat with Johnson was decedent Cecil and in the rear seat were decedents Claussen and Coralyss Hunt. Attendance upon a school entertainment in Council Bluffs is shown to have been the purpose of those in the car. With the occupants sitting in the manner

described, Johnson driving, the car left the Claussen home. No testimony accounts for the car or its movements or its occupants thereafter until it approached the place of the accident. Without relating here the details of the collision, it is sufficient to say that the impact threw the two occupants of the front seat from the car, and to a considerable distance, and that these two persons were Johnson and Cecil, who sat in the front seat as the car left the Claussen home in Logan. The other two occupants remained in the rear seat that they occupied at the commencement of the trip. Thus it appears that the only persons who were in the front seat where they could have been driving the car at the time of the collision were Johnson and Cecil. The distance between the point of departure at Logan and the place of the accident was about 15 miles, with the towns of Missouri Valley and Loveland intervening. The time consumed in traveling the 15 miles was less than half an hour.

In the light of this circumstantial evidence, but two theories would suggest themselves, one that Johnson was driving the Ford at the time of the accident, the other that the person who was driving was Cecil.

''A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory.'' Asbach v. C. B. & Q. Ry., 74 Iowa 248, 250, 37 N. W. 182, 183. See also, Reimer v. Musel, 217 Iowa 377, 251 N. W. 863; Westenburg v. Johnson, 221 Iowa 134, 264 N. W. 18.

It is apparent that the only thing that sustained the theory that Cecil was driving was the circumstance that he was in the front seat at the time of the accident. That is, he was where he could and might have been driving. To sustain the other theory, that Johnson was driving, there is the same circumstance that he was in the front seat, and the additional facts that it was his own car that was being driven, and that 15 miles up the road, at the commencement of a comparatively brief automobile trip that was to be made to Council Bluffs, he was driving. Less than half an hour had elapsed. No discussion is neces-

sary to demonstrate that the two theories were not of equal probability. To reasonable minds, the theory that Johnson was still driving at the time of the accident would easily be the more convincing, and the more readily acceptable. But the query remains whether these facts and circumstances are of such a nature and so related to each other that a jury would be warranted in finding that the conclusion that Johnson was driving was the only one (in this case the only one of two) that could fairly or reasonably be drawn. In view of the circumstances and facts that have been set out, we are of the opinion that the answer should be in the affirmative. The only other conclusion, that is, that Cecil was driving, was a possibility, but unconfirmed by facts or circumstances of a supporting nature, looking in the direction of probability. And to the extent that the theory that Cecil was driving may lack probability, added reasonableness characterizes the other theory, because there were but the two alternatives. It was not a situation in which two different deductions appeared to be equally supported, as in Tyrrell v. Skelly Oil Co., 222 Iowa 1257, 270 N. W. 857.

**■■■** The jury was instructed that, to recover, claimant must prove by the preponderance of the evidence "that at the time of his death the said Andy L. Claussen was riding as a guest in the automobile operated by the said W. B. Johnson." Claimant did not object to nor appeal from the giving of this instruction. Appellant moved to vacate the verdict and for new trial, one ground being that there was no evidence in the record to sustain a finding by the jury that claimant's decedent was riding in the car as a guest. Appellant assigns as error the overruling of the mentioned ground of the motion. The instruction having been the law of the case governing the jury, there must be a reversal if the evidence was insufficient to warrant the finding of fact the instruction required. Pfannebecker v. C. R. I. & P. Ry. Co., 208 Iowa 752, 226 N. W. 161.

To prove that decedent Claussen was a guest, claimant relies upon the circumstances found in the record. In addition to the evidence already set out, it was shown that three of the decedents, Johnson, Claussen, and Cecil, for years had been friendly acquaintances, living in the town of Logan, frequently accompanying each other, often with other members of their families, to places of entertainment, such as school contests, football and basketball games, and band concerts. On the Thurs-

day evening preceding the Saturday night of the accident, Cecil and his wife had driven their car from Logan to Council Bluffs, in order to attend a school entertainment, and upon this trip Claussen and his wife and Johnson were with the Cecils. The decedent Coralyss C. Hunt also lived in Logan and was an intimate friend of Claudia Cecil, a daughter of decedent Cecil. The Cecil family, at the time of the accident, was living in the same home with the Claussens, at a distance of about two blocks from the Johnson residence. Upon the evening of the accident there were two automobiles that started from Logan, the purpose of all those riding therein being to attend the same school entertainment in Council Bluffs. One was the Johnson car and the other the car of Dr. Hook. The Hook car started a few minutes after the departure of the Johnson car. Witness Claudia Cecil, detailing activities on the part of herself and Coralyss Hunt, just before the cars departed from Logan, testified: ''Coralyss Hunt was about my age. She was 20. We girls were calling around there for a few minutes before to see how each of us would get to the ball game, that is who we would ride with and we were dividing up the loads the best we could to see how we could all get there.'' This dividing up of the loads in the two cars resulted in Coralyss Hunt becoming a passenger in the Johnson car and Claudia Cecil in the Hook car, with Dr. and Mrs. Hook and a Miss Welch.

Applying the authorities already cited, the question is whether the facts found in this circumstantial evidence are of such a nature and so related to each other that the only conclusion that can fairly or reasonably be drawn from them is that Claussen was riding as a guest in the Johnson car. Taking into consideration every thing that is in the record in this case, we are of the opinion, although it may be said to be a close question, that a jury would be justified in coming to such a conclusion. The manner in which Coralyss Hunt and Claudia Cecil were dividing up the loads between the two cars, one of them being the Johnson car which was then standing at the curb where a part of the girls' activities was going on, with Johnson, behind the wheel, coupled with the manner in which Johnson appears to have accepted as a matter of course the designation by the girls of those who be occupants of the Johnson car and those who would ride in the Hook car, appeals to us as supporting the theory that Johnson and Hook were hosts for the purpose of

transporting this group of acquaintances, all to the same entertainment. And the actions of those who rode in the cars, in arranging, with the assistance of the two girls, their places in the cars, were actions that would be reasonable and natural on the part of a group of persons invited to be conveyed to the entertainment. Each deferred to the other, in the manner of guests, and rather inconsistently with the manner of persons who had purchased the right to ride or were joint adventurers, each having control over the vehicles and their operation. This evening's occurrence was but one instance of a long continued practice of this group of friends, that is, their collective attendance upon entertainments, reaching the place of entertainment riding now with one of the group, again with another, as convenience might dictate. The trip was not for any business purposes. Instead it was a mission for the pleasure or recreation of a group of friends. The distance to Council Bluffs was inconsiderable. We have pointed out that on the previous Thursday evening Johnson had attended a similar evening's entertainment in Council Bluffs, riding in Cecil's car, and Cecil on this Saturday night was riding with Johnson. Upon all that is in the record our conclusion is as above stated. Defendant suggests no other conclusion that would follow from such circumstances.

■■■ In one of the assignments of error defendant urges that there was insufficient evidence to warrant submitting to the jury the question whether the Ford was being operated in a reckless manner at the time of the accident. To show recklessness plaintiff offered evidence that tended to prove the following. As the Ford approached the place of·the accident, an unpainted homemade trailer headed south, standing partially on the west shoulder, occupied one to two feet of the west side of the paving. Upon the trailer was furniture loaded to a height sufficient to make invisible from the north a Dodge automobile, to the rear end of which the trailer was attached. The trailer was a dark object, without lights on or about it. The right-hand side of the Ford struck with a glancing blow the portion of the trailer that extended onto the paving. The Ford then veered to the left, and came into collision with a large truck which, approaching from the south, had reached a point in close proximity to the trailer. The left front fender of the truck struck the Ford at about the Ford's rear right wheel. At the instant of this impact the Ford

was moving or sliding sidewise, after striking the trailer, so that its headlights were pointing toward the west. Following the contact with the truck the Ford came to a stop and burned. Before any collision, the driver of the truck seeing the approaching Ford, and also the trailer, was blinking his lights, that is, turning them off and on, and was pulling the truck over as far as he could onto the east shoulder. At the time of the collision the truck was occupying with its left wheels only a portion of the east half of the paving. Almost immediately before the accident the Ford had overtaken and passed two other southbound cars, one of which as shown by its speedometer was then traveling at 60 miles per hour. The driver of this car estimating the speed of the Ford by comparison with the speedometer shown speed of his own car, testified that in his opinion the Ford was traveling in excess of 80 miles per hour, without any noticeable slackening of speed thereafter. Another witness estimated the speed of the Ford at 75 to 90 miles per hour. It was also in evidence that at this place this road carries the combined traffic of two primary highways known as numbers 30 and 75, and that the traffic, ordinarily heavy, was unusually so at the time of this accident, happening upon a Saturday evening when there is an increased movement of all types of vehicles. Johnson knew the road well, having traveled it for years, and that the traffic was especially heavy on this particular evening was, of course, by him observable. The width of the paving was 18 feet, bordered on either side with a dirt shoulder.

Whether the evidence generated a jury question as to the alleged reckless operation of the Ford depends upon the conclusions to be drawn from all the facts, circumstances, and surroundings shown in the record. One of these facts was a speed that was in excess of 80 miles per hour, possibly as high as 90. But speed alone is not particularly decisive of the quality of the conduct of one driving a car, with respect to recklessness. In large measure, it is in the surroundings and circumstances under which a given speed is maintained that the criterion is to be found. In the case at bar, in addition to what already has been set out, the evidence shows that Johnson was driving at this speed at a time between daylight and deep darkness when the seeing of objects by means of artificial lights was difficult. And yet sufficient of daylight remained that the trailer was visible as a dark object on the highway by a witness who was out in

a nearby field, sitting in a car that was about 70 rods distant from the trailer. There was observable by Johnson the heavy movement, at the time of the accident, of other vehicles, traveling in both directions, upon this 18 foot paving. As has been said, after Johnson had overtaken and passed at a speed in excess of 80 miles per hour two other cars, one of which was moving at 60 miles per hour, the Ford almost immediately crashed into the trailer and then into the truck. The record is that there was no apparent slackening of his speed, though the truck he was approaching, with its headlights being turned off and on, was plainly visible to those in the cars that Johnson had passed, and must have been visible to him as well. The degree of visibility of the trailer, as shown by the evidence, was such that it was a jury question as to when it must have been seen by Johnson, if he was looking ahead. These are some of the surroundings and circumstances. Undoubtedly there is a point where, because of attendant circumstances, minds of reasonable persons would differ and a jury question would arise on the question whether a speed in excess of 80 miles per hour would be "proceeding without heed of or concern for consequences," exhibiting "no care, coupled with disregard for consequences." Siesseger v. Puth, 213 Iowa 164, 182, 239 N. W. 46, 54. In the opinion of the majority of the court that point is reached in this case, the record warranting a finding that decedent Johnson drove his car into a situation upon an 18-foot paving where the danger was apparent, and that this was done with disregard for the almost inevitable consequences.

■■■ In the claim that was filed, it was alleged that decedent Johnson was reckless in several particulars, including failure to keep a lookout, want of control of the car, a lurching onto the left side of the paving while the car was moving at a reckless speed exceeding 80 miles per hour. These particulars were submitted to the jury with one other to the effect that, considering the traffic upon the highway, decedent drove his automobile at a reckless speed of at least 80 miles per hour. No question as to the sufficiency of these particulars having been raised before the filing of defendant's answer, and it appearing from an examination of the record that there was evidence tending to sustain each of them we find no error as claimed by defendant in these particulars having been submitted.

■■■ In the charge to the jury, the court carefully and fully

defined reckless operation of a motor vehicle, in language this court has used, and incidentally saying that recklessness is more than negligence. In the giving of this instruction, defendant says there was error, not because the court did not correctly define reckless operation, but because the court did not also define negligence. But error does not appear. In Kaufman v. Borg, 214 Iowa 293, 242 N. W. 104, an action to recover damages sustained by a guest riding in the defendant's automobile, the court did instruct the jury as to the meaning of recklessness, negligence, and other legal terms. The defendant-appellant in that case complained particularly of the giving of the instruction on the subject of negligence, contending that the subject of negligence in an action under the guest statute tended to confuse and mislead the jury and to leave it uncertain whether the jury should determine the question of liability solely on the alleged recklessness of the appellant or upon the negligence as defined by the court. This court was of the opinion that there was merit in this contention. We cannot see that any prejudice to defendant in the case at bar resulted by reason of the court having confined the jury's attention to the definition of reckless operation of a motor vehicle. We have examined all the errors assigned and find there is no ground for reversal. There is an affirmance, as to each of the three claims.—Affirmed.

STIGER, C. J., and HAMILTON, MILLER, DONEGAN, KINTZIN-GER, ANDERSON, and MITCHELL, JJ., concur.