JOHN L. LEWIS, JR., appellee, v. ARLO BAKER, appellant.

No. 49935.

(Reported in 104 N.W.2d 575)

AUGUST 2, 1960.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellant.

Richard C. Turner and Matt Walsh, both of Council Bluffs, for appellee.

THOMPSON, J.—Although section 321.494 of the Iowa Code was without doubt enacted for a reasonable purpose, it has resulted in seemingly endless litigation. It is the so-called "guest statute"; clear enough in itself, but most difficult to apply to the varying factual situations that arise. We are faced with this problem again in the case at bar. The trial court solved it by submitting the issues to a jury, which returned its verdict for the plaintiff, and we have this appeal.

The plaintiff was injured in a collision between an automobile, in which he was admittedly riding as a guest of the defendant, and a truck. The accident occurred about 7 p.m. on February 9, 1957, on U. S. Highway 75, in Harrison County. The defendant's 1957 Chevrolet car was proceeding north on the highway, and it collided with a southbound truck driven by Duane E. West on a curve about two and one-half miles south of Missouri Valley. Photographs show the collision to have been largely a "sideswiping" one; the damage was to the left sides of both vehicles.

The plaintiff was 56 years of age and the defendant 31. They met in the Midway Tavern in Council Bluffs on the afternoon in question, where plaintiff arrived about 1 p.m., and where he consumed six beers between that time and four o'clock following. There was no prearrangement between the parties as to any activity, but during the afternoon the idea of going coon hunting came up, and at the time it seemed a good thing to do. One Orville Vanness, 38, who was also in the tavern, joined the party and they started out to collect the necessary equipment, including several coon dogs. Whether there were four or five of these is in some dispute, but it is not thought that the presence or absence of one coon dog more or less has any bearing on the legal propositions herein involved. The party started from Council Bluffs about sundown, with the defendant driving his nearly new Chevrolet, the plaintiff riding next to him in the middle of the front seat, Vanness on the right, and the coon dogs dispersed in the back of the car and one or two in the trunk. So the party proceeded to the scene of the collision.

■ I. Six errors are assigned by the defendant. The first is that the court erred in denying defendant's motion for directed verdict and later for judgment notwithstanding. This, of course, brings up for analysis the facts in the case; particularly whether there was any evidence of recklessness sufficient for submission to the jury. Our question is whether, taking the evidence in its most favorable aspect for the plaintiff, there was a jury issue. It is not for us to say whether there was recklessness, but only whether reasonable minds, such as in theory at least are found in our juries, might so conclude. We shall not attempt to analyze or discuss the many cases in which we have dealt with the problem; to do so would require an extensive treatise prohibited by limitations of time and space. It is sufficient to say that among the numerous decisions facts and language can be found which adept counsel can cite in support of either side of almost any case arising under the statute.

■ ■ So it is here. Both plaintiff and defendant have extensive briefs in which they rely upon many of the various decisions which have been made under differing states of facts. In the case at bar, we think there was substantial evidence

which requires a holding there was a jury question upon the issue of recklessness. Here we consider only the evidence favorable to plaintiff, whether or not it was contradicted. This is the rule when we determine whether a jury question was engendered, when the complaint is that a peremptory verdict for the defendant should have been directed. The trial court properly instructed that "recklessness means more than want of ordinary care. It must be shown that the operator of the vehicle used no care, coupled with a disregard for consequences, and to constitute recklessness, the acts must be such as to manifest a heedless disregard for or indifference to the rights of others. It requires actual knowledge of an existing danger or the presence of danger so obvious that the operator should have knowledge of it and proceeded without heed of or concern for the consequences, and that the conduct of the operator of the vehicle is such that the consequences of his actions are such that the injury is a probability rather than a possibility. * * *."

The facts supporting plaintiff's contention that the matter was properly submitted to the jury show that as defendant's car proceeded north on an 18-foot paved highway, it was being driven at a speed of from 110 to 115 miles per hour. The plaintiff testified that at defendant's request he looked at the speedometer, saw the indicator was wavering between those speeds, and so advised him. This was shortly before the accident. He also testified that he then said "That's too fast, cut her down, we got plenty of time, there is no use to get there any sooner, too big a hurry." To this, according to the plaintiff, the defendant laughed and replied " 'I had a hundred ten a couple times before and one of these days I'm going to see how fast it will go.' " There was no change in speed from the time of this conversation to the place of the collision. Lyle Rodenburg, a 17-year-old youth who was riding in a car going north on the highway, testified that when the defendant's car passed the one in which he was riding about a mile and one half south of the accident scene it was traveling at 85 or 90 miles per hour. This was just before it reached an underpass where there was a curve in the road, described as somewhat sharper than the one on which the collision occurred. Rodenburg watched

defendant's car until it turned at the underpass and then lost sight of it. Duane West, driver of the truck involved in the accident, said that defendant's automobile was traveling "at least 80 miles per hour" as it came toward him. Harry Friend, who was driving a truck south immediately behind Duane West's truck, testified: "He could have been going faster, but he was going 60 at least." Ronald Totten, who was riding with Friend, said: "In my opinion the automobile was traveling at least 90."

A warning sign at the approach to the curve from each direction showed the permissible speed to be 45 miles per hour. The curve itself is described as "a five-degree curve" and the total change of direction in the entire curve is "22 degrees six minutes." The defendant was familiar with the highway and with the particular curve. He had driven it many times; a few years before he had driven the road each way five days each week on his way to and from his employment. The road was approximately level at the curve, and so far as the record shows was dry. The time was at least one hour after sundown, so that apparently it was almost if not quite fully dark.

We have often said that speed alone is not sufficient evidence of recklessness to engender a jury question. Thornbury v. Maley, 242 Iowa 70, 74, 45 N.W.2d 576, 579, and citations. But the statement is so hedged about with qualifications that it means little. Whether excessive speed may amount to recklessness depends upon the attendant circumstances; and there are always attendant circumstances. These arise from the condition and width of the highway, of the light conditions, whether the road is straight or curved, the presence or absence of other traffic, and innumerable other facts which arise in and vary from case to case. From these things, coupled with speed, the courts must determine the issue. Speed does not operate in a vacuum; there are always other conditions surrounding it.

The situation in the present case seems identical with that which prevailed in Anderson v. Elliott, 244 Iowa 670, 57 N.W.2d 792, in which we held there was a jury question upon negligence. There, as here, the car entered a curve with which the driver

was thoroughly familiar, at night, at a speed of 80 miles per hour. There was no other traffic involved; the automobile failed to make the curve and injury resulted. In the instant case, there is substantial evidence that defendant's car entered the curve at such a speed it could not follow the road so as to remain on its own side, but crossed over to its left and collided with the truck. Duane West, the driver of the truck, testified he saw the car coming toward him at high speed, concluded it was not going to be able to make the curve, and pulled the truck to its right as far as he could; it was partly on the right shoulder when struck. We think the excessive speed, the knowledge of the curve on the part of the defendant, his failure to heed plaintiff's warning, the limited visibility due to darkness, and the 45 miles per hour warning sign, are facts from which the jury was properly permitted to determine the issue of recklessness. There was a probability rather than a mere possibility of danger. Schneider v. Parish, 242 Iowa 1147, 1152, 49 N.W.2d 535, 538; Russell v. Turner, 56 F. Supp. 455, 462. The cases of Thornbury v. Maley, supra, Claussen v. Estate of Johnson, 224 Iowa 990, 278 N.W. 297, and McKlveen v. Townley, 230 Iowa 688, 299 N.W. 25, are also quite similar in their facts and to the instant case, and in each we found a jury question.

The defendant relies somewhat upon the case of McBride v. Dexter, 250 Iowa 7, 92 N.W.2d 443. There the accident happened upon or near the entrance to an eight-degree curve. We said this curve "as shown in a photograph in the record is a very slight one. It would not normally be a serious danger even if entered at a considerable speed. The change in direction is very little, and on a 24-foot highway with no other traffic at hand could be negotiated with the slightest change in the steering of the car." 250 Iowa at page 15, 92 N.W.2d at page 448. The factual difference is at once obvious. Here, while the curve is described as five degrees, the total change in direction is 22 degrees six minutes. The pavement in the McBride case was 24 feet wide; in the case at bar only 18 feet. No other traffic was at hand in the McBride case; here there was traffic. Moreover, while the photographs in evidence in McBride showed only a slight change in direction, those before us in the instant case

show a quite substantial one. The McBride case is not factually in point.

██ II. Defendant's second assignment of error alleges that his cross-examination of the plaintiff as a witness in his own behalf was unduly restricted. In argument, defendant specifies three questions asked, to which objections were made and sustained, as the basis for this complaint. For reasons which will be made apparent hereinafter, we do not go into the question whether it was technical error to grant the objections. If there was error, no prejudice appears. All three of the questions concerned a statement which the plaintiff had made to a representative of the defendant shortly after the accident while plaintiff was still confined to a hospital. The first question came after plaintiff had testified that some of the answers appearing in the statement were not true. It was: "Which part do you say were not true?" Although the court sustained an objection, the record shows that thereafter the defendant was permitted to examine the plaintiff at length as to the particular answers made, and he told in detail which were true and which were not. The matter was also gone into on redirect examination, and some additional testimony as to the truth or falsity of the answers in the statement was elicited.

The second question to which objection was sustained, and upon which ruling error is predicated and argued, was this: "Do you remember this question: 'Did either of you fellows have anything to drink before you went up?' and this answer 'Yes'. Do you recall that question and answer?" But on further cross-examination the record shows plaintiff testified that during the afternoon of the accident he consumed six beers. He also testified on this matter on redirect. So the only information which was excluded, if there was such, was if and how much the defendant had drunk during the afternoon. Suppression of the answer as to how much the defendant himself had drunk during the afternoon does not seem, under the circumstances of this case, to be sufficiently prejudicial, even if erroneous, to require reversal.

The third question to which answer was denied the defendant was: "And do you recall this question being asked you: Q.

'You don't feel from what you know that he was driving reck-lessly?'" We have in the past said that a witness who has testi-fied to facts may not, on cross-examination, be questioned as to prior expressions of opinion contradictory thereto. Sweet v. Wright, 62 Iowa 215, 217, 17 N.W. 468, 469; Sunberg v. Bab-cock, 66 Iowa 515, 518, 24 N.W. 19, 20; Walmer-Roberts v. Hennessey, 191 Iowa 86, 94, 181 N.W. 798, 802. We have also applied the rule in criminal cases; but it has been criticized, and we were careful to say in State v. Bales, 251 Iowa 677, 682, 102 N.W.2d 162, 165, that "a further exception to the hearsay rule as to admissions by a party in a civil case is not here involved." The rule we have followed in the past has been criticized, and we do not find it necessary to reaffirm it here.

It is apparent the same result that would have been reached by an affirmative answer to the excluded question was obtained by other questions and answers which appear in the record. In the same cross-examination appears this:

"I recall being asked 'What kind of job driving was he do-ing?' and my answer 'He was going right along' and that was true. I recall the question 'Doing Okay?' and my answer 'Yes' and that was true. The question 'Did he have any trouble, forc-ing anybody off the road before the accident?' and the answer 'No' was true. I recall the question 'No cause for alarm then?' and the answer 'No', and that was true."

It is apparent that nothing would have been added if the excluded answer to the witness's opinion as to whether he thought the defendant had been driving recklessly had been admitted and had been in the affirmative. If he was driving "Okay" he was not driving recklessly. If error there was in excluding the answer it was without prejudice.

III. Next defendant postulates error upon a denied objection to a question put by plaintiff's counsel to his medical witness, Dr. Lee R. Martin. The doctor was asked whether it would be normal for an amputee, such as the plaintiff, who had lost a finger as a result of the accident, to have pain in the future. After objection denied, the doctor said it would not be normal to have such pain, but it does occasionally occur. Again we do not decide the merits of the ruling. The answer was more

favorable to the defendant than to the plaintiff, and the court did not submit future pain as an element of damage. No prejudice resulted.

IV. The fourth error assigned is that the trial court should have, and did not, give a requested instruction which would have told the jury that speed alone does not necessarily constitute recklessness. We have commented upon the question of speed and its relation to recklessness in Division I above. While the instruction asked stated what we have many times said is the rule of law, in fact it has little meaning, as we endeavor to point out in the first division of this opinion. We have held it not reversible error to refuse to give such an instruction in Skalla v. Daeges, 234 Iowa 1260, 1272, 15 N.W.2d 638, 644, and in McKlveen v. Townley, supra, 230 Iowa 688, 693, 299 N.W. 25, 27.

V. The defendant also requested an instruction that recklessness and negligence must be distinguished and that there could be no recovery for negligence. This request was refused, and error is assigned. The assignment is without merit. The court fully instructed the jury on the question of recklessness, which it defined in terms which are in accordance with our holdings, and told the jury it means more than the want of ordinary care. As this court said in Claussen v. Estate of Johnson, supra, 224 Iowa 990, 999, 278 N.W. 297, 301, "We cannot see that any prejudice to defendant in the case at bar resulted by reason of the court having confined the jury's attention to the definition of reckless operation of a motor vehicle." We adopt the same statement here.

VI. Finally it is complained that the verdict of the jury, which was in the amount of $12,500, was excessive. Plaintiff's injuries, as detailed by Doctor Martin, the attending physician, were, in addition to facial lacerations, rather extensive damage to his left wrist and hand. It was necessary to amputate the left index finger and the tip of another finger. There were several fractures of the bones of the wrist, probably four or five. There was also a comminuted fracture of the radius bone, the larger bone of the forearm, in the wrist joint, and a dislocation of the end of the ulna bone of the forearm. Surgery was re-

quired to correct a distortion of the radius bone. Plaintiff was given opiates for pain relief while he was in the hospital, which was from February 9 to March 1, 1957. The doctor estimated a fifty per cent loss of use of the left hand and from fifteen to twenty per cent of the wrist.

The plaintiff testified to severe pain from his injuries, extending over a considerable period of time. He is a laborer, and the loss of one index finger, a part of another finger, and the loss of use of his hand and wrist to the extent indicated are a serious handicap to one who must earn his livelihood by the use of his hands. It would avail nothing to discuss the facts in other cases. A study of the evidence leads to the conclusion that the judgment here is not excessive to the extent that we should interfere. The question is ordinarily for the jury, unless its verdict appears to be the result of passion and prejudice or it has allowed more than the rule of fair compensation permits. Neither of these considerations obtains in the case at bar.— Affirmed.

LARSON, C. J., and GARFIELD, GARRETT, HAYS, and THORNTON, JJ., concur.

PETERSON, J., takes no part.

OLIVER, J., not sitting.