AGNES R. DELAY, administratrix of Louis R. Falt estate, appellant, v. ARTHUR R. KUDART, administrator of Gordon Henrikson estate, appellee.

No. 51256.

(Reported in 128 N.W.2d 201)

524

May 5, 1964.

Francis J. Pruss, of Cedar Rapids, for appellant.

Shuttleworth & Ingersoll, of Cedar Rapids, for appellee.

THORNTON, J.—Plaintiff's decedent and defendant's decedent lost their lives in the automobile collision out of which this action arises. For convenience we will refer to them as plaintiff and defendant.

Plaintiff's action for wrongful death is in two divisions. The first is based on negligence wherein plaintiff riding in defendant's auto seeks to avoid the guest statute, section 321.494, Code of Iowa, 1958. He alleges he had been engaged to perform mechanical services on defendant's auto and had adjusted the carburetor and was riding in defendant's auto for defendant's benefit to determine whether the engine and carburetor were properly adjusted and performing properly. The second division is based on reckless operation by defendant.

The collision occurred about 9:30 p.m., April 14, 1961, on Highway No. 74 in Linn County. Defendant was driving his 1956 Chevrolet in a southeasterly direction. Defendant's wife was seated in front, plaintiff was on her right. Defendant's car went into a skid and across the center line of the highway and into the path of a northbound car. The front of the northbound car came in contact with the right-hand side of defendant's car. Defendant's Chevrolet was wrapped around the front end of the northbound car. All occupants of defendant's car were killed. The driver of the northbound car was so severely injured he recalled little if anything of the collision. No eyewitnesses were found. Also no witnesses were found to testify to plaintiff's status as an occupant of defendant's car. Plaintiff seeks to prove his case in important detail by circumstantial evidence. The trial court directed a verdict for defendant at the close of plaintiff's evidence because of the insufficiency of plaintiff's evidence to show his status was other than a guest and to show reckless operation. Plaintiff appeals urging the sufficiency of the evidence in both instances.

I. Turning first to division one of the petition, when it appears plaintiff was riding in defendant's auto it is presumed plaintiff was a guest and plaintiff has the burden to prove his status was other than a guest. Livingston v. Schreckengost, 255

Iowa 1102, 1104, 1111, 125 N.W.2d 126, 127, 131, and citations. If plaintiff were riding in the auto for the purpose of determining whether the engine and carburetor were properly adjusted and performing properly at defendant's request he would not be a guest. Ritter v. Dexter, 250 Iowa 830, 95 N.W.2d 280; Winter v. Moore, 255 Iowa 1, 121 N.W.2d 82; and Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470.

■ Plaintiff seeks to prove his status circumstantially. An issue of course may be thus proved, but this evidence must be such as to make plaintiff's theory reasonably probable, not merely possible, and more probable than any other theory based on such evidence. Generally, however, it will be for the jury or other trier of the facts to say whether the circumstantial evidence meets this test. See rule 344(f)16, Rules of Civil Procedure. Defendant contends the evidence produced does not reach the dignity of being circumstantial. If it does not, or if it does not make plaintiff's theory reasonably probable, not merely possible, and more probable than any other theory, the ruling of the trial court must be sustained.

Viewed in the light most favorable to plaintiff, the evidence is, plaintiff was an excellent mechanic and interested in fast cars. Defendant was a good mechanic, also interested in fast cars, capable of doing his own work, but did not have sufficient necessary tools. They were not good friends but were well acquainted. Plaintiff had tools and on occasion loaned tools to defendant. Defendant had installed a larger motor in his 1956 Chevrolet and had otherwise improved the car including the installation of three two-barrel carburetors, all to obtain greater speed; that shortly prior to April 14, 1961, the engine had a very slight knock in it. He discussed this condition with other mechanics. About 8:30 p.m. April 14 plaintiff's aunt saw a man wearing a red shirt in the garage used by plaintiff at the rear of the home of plaintiff and his aunt. She also saw a blue light or flame. She did not recognize the man. She did know defendant. Defendant often wore a red windbreaker jacket. He was wearing it early in the evening, about 5:30 p.m. He was wearing a windbreaker jacket when the collision occurred but there is no evidence of the color. Plaintiff was shown to be in the

garage prior to 8 p.m. but there is no showing he was there when his aunt saw the man wearing the red shirt at about 8:30 nor that defendant's car was there. Plaintiff was wearing a grey plaid shirt. Following the collision a timing light that cast a blue light, and wrenches used in adjusting carburetors installed in series, were found in plaintiff's garage, not put away and in a position to sustain an inference of recent use. The timing light did not belong to plaintiff. Much of the evidence relating to the timing light and carburetor wrench was excluded on motion or not admitted but we are considering the evidence as though all of the evidence offered relative thereto was properly admitted.

Plaintiff further showed defendant, defendant's wife and he were riding in defendant's car driving in a northerly direction on Highway No. 74 at about 9 p.m. On two occasions, one while the car was in motion, the other while stopped, plaintiff and defendant were observed leaning forward in the car. The car was observed speeding up and slowing down, and turning around to proceed in a southerly direction.

Plaintiff contends the foregoing sustains his theory he was engaged to time the engine and was on Highway No. 74 for the purpose of determining if the motor was properly timed. We do not think the foregoing supports either. First, as to being engaged to work on the car, the evidence does not show plaintiff was near defendant's car until he is seen riding in it on the highway. There is no showing the car was near plaintiff's garage that day or any other time. If we assume the man in the red shirt was defendant and further assume he was using the timing light borrowed from one of the witnesses and using the carburetor wrenches (their ownership is not shown but we will assume they are plaintiff's) on his own car, we have established nothing helpful to plaintiff. Plaintiff's presence to work, help or advise has not been established. At least it must in some manner be shown plaintiff was present when some work was done on defendant's car. Next the action on the highway, the apparent testing and claimed listening to the motor. It is just as reasonable to assume defendant was merely showing plaintiff

his car as it is to assume plaintiff was there for the purpose of determining if his work was successful in timing the car properly.

■ It is true the benefit to be received by the owner or operator need not be the only purpose or sole motivating factor in furnishing transportation, it need only be a substantial factor. But there must be some evidence of this.

■ From the circumstances shown by plaintiff it does not follow, either as a matter of logic or human experience, either that defendant engaged plaintiff to time the car or that plaintiff was riding in the car to check its performance. This is true even if we assume plaintiff was in the garage with the defendant in a red shirt or windbreaker. The evidence simply does not show who was doing what. Plaintiff in support of his circumstantial evidence cites Claussen v. Estate of Johnson, 224 Iowa 990, 278 N.W. 297. An examination of that case and comparison with this shows the difference between evidence of facts supporting the theory advanced and evidence of facts that do not support the theory.

As observed by the trial court, all we know from the evidence is that around 8:30 p.m. April 14 defendant, his wife, and plaintiff were riding on the highway.

II. Plaintiff's division two alleges reckless operation of the car by defendant.

In pertinent part our guest statute, section 321.494, Code of Iowa, 1958, provides: "The owner or operator * * * shall not be liable for any damages to any passenger or person riding * * * as a guest * * * unless damage is caused as a result of the driver * * * being under the influence of intoxicating liquor or because of the reckless operation by him * * *."

Intoxicating liquor is not involved here.

■ Plaintiff seeks to show recklessness by the circumstances of defendant's car being a fast car capable of high speeds, the purpose of the trip, defendant's wife's pregnancy, and the physical facts.

Plaintiff's evidence sustains a finding the car was built to travel at high speeds, and that defendant was well aware of the highway, the curve and highway traffic. The defendant was driv-

ing the car for the purpose of testing it. That the Chevrolet was capable of going 135 m.p.h. was stricken on motion. The jury could also properly find the highway ran generally from northwest to southeast, it was of asphalt concrete, 24 feet wide with 9-foot shoulders, it ran slightly downhill from north to south at the point of impact, there was a 3° curve in the roadway approximately 750 feet north of the point of impact. The point of impact was on the straightaway. Also the curve was constructed for safe travel at 70 m.p.h. and that a highway patrolman had traversed the curve in pursuit of violators in the 90's without any difficulty. From an engineer's testimony the finding could be made that assuming a side friction factor of 0.30 (a probable side friction factor) the curve could be negotiated at 99½ m.p.h. before skidding would occur. There were no "curve" or "slow" warning signs at the curve. The point of impact was in the left-hand side of the pavement; that defendant's auto was in a sideways skid for 196 feet 3 inches at the time of impact; that the front of the northbound car, a Chrysler, came into contact with the right-hand side of defendant's Chevrolet. The Chevrolet was wrapped around the front of the Chrysler, the Chevrolet was a complete and total wreck, the glass from the Chevrolet was found 160 to 175 feet south or in the direction of travel. The Chevrolet was so wrecked and twisted it could not be towed away but it was necessary to load it on a lowboy trailer. The cars stopped at the point of impact, the heavier Chrysler did not move the lighter Chevrolet. The three occupants of defendant's car were killed instantly, defendant was thrown out on the pavement, defendant's wife and plaintiff were crushed to death, plaintiff had a broken neck. Defendant's wife was three and a half to five months pregnant. The driver of the northbound car was severely injured, he remembered nothing of the accident other than he was traveling 55 m.p.h.; that defendant's car left skid marks on the left-hand side of the highway coming into the curve about 750 feet north of the point of impact, skid marks were visible on the rock road entering the highway from the east at the point of the curve, the marks then crossed the highway to the right or west side on the shoulder and in the ditch (plaintiff's witnesses testified to

both) and then the sideways skid marks shown in the exhibits for 196 feet 3 inches to the point of impact.

A highway patrolman, at the scene shortly after the collision, testified from his observation, training and experience defendant was traveling more than 60 m.p.h. immediately prior to the impact, he would not want to make a statement as to how much more than 60 m.p.h. the car was traveling but it was traveling at a high rate of speed, an excessive rate. On cross-examination he testified, "I would not try to make an estimate of the speed." The defendant's Chevrolet was in good running condition, the steering gear was in good condition and the oversize tires on it in good condition prior to the collision. There was a two- or three-inch drop off from the asphalt pavement to the shoulder. One tire caught on the asphalt as the car came back onto the highway and into the sideways skid. It had been raining earlier in the day, but the pavement was dry, the shoulders damp and soft.

If the plaintiff is entitled to have his case considered by the jury there must be evidence of facts from which the inference of recklessness may be fairly drawn.

"Reckless operation of a motor vehicle as used in section 321.494, Code of Iowa, 1958, means more than negligence, more than want of ordinary care. It means, proceeding with no care coupled with disregard for consequences, the acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or danger so obvious the operator should be cognizant of it, when the consequences of such actions are such an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligent it may be reckless without being willful and wanton. [Citing cases] * * * [The elements of recklessness are:] (1) No care coupled with disregard for consequences. (2) There must be evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences. (3) The consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility. We have required evidence of a persistent course of conduct to show no care coupled

with disregard of consequences. If it were not so required we would be allowing an inference of recklessness from every negligent act." Kauzlarich v. Fitzwater, 255 Iowa 1067, 1069, 1070, 125 N.W.2d 205, 206; Allbee v. Berry, 254 Iowa 712, 119 N.W.2d 230; and citations in each.

Plaintiff's chief reliance is on excessive speed. His evidence other than of the other drivers is circumstantial. From the circumstances presented we think it follows that plaintiff's theory of an excessive speed in excess of 100 m.p.h. is not merely possible, but probable, and more probable than the theory that defendant was driving at a reasonable speed or less than 70 or 80 m.p.h. and some other act of omission or commission caused the collision and damage. The evidence of the construction of the curve as a 70 m.p.h. curve, the testimony of the patrolman to going around the curve safely in excess of 90 m.p.h., the engineer's testimony the curve could be negotiated at 99½ m.p.h., in effect an ideal road for high speeds, the testimony of the condition of the tires, the condition of the car, its mechanical condition, and its motor, the course followed by the car for the last 800 feet before the collision, the results of the collision, and the nighttime speed limit of 60 m.p.h., all support plaintiff's theory and could properly be found by the jury to be more reasonable than any other theory based on such evidence.

Evidence of a persistent course of conduct to show no care is usually shown by direct testimony, e.g., complaints by occupants as well as the manner of driving. Here such is not available and there is no evidence from which a jury could find that complaints were made. But if the first premise is correct, that of excessive speed, the jury could properly find to attain such excessive speed would require intentional persistent conduct. The driver would have to intend to go that fast, it could hardly be inadvertent, or the jury could so find. We have often pointed out speed alone is not evidence of recklessness, but we also point out that speed does not occur in a vacuum. Here the surrounding circumstances are a dark night, a heavily traveled road with a slight curve, all well known to defendant. He failed to make a known right-hand curve, this is evidence of lack of control coupled with speed. His speed was such he was on the

left-hand shoulder while making the curve and did not regain control of his car within 750 feet.

From the facts in evidence, circumstantial it is true, the jury could fairly find defendant's driving was more than negligent, that it constituted no care coupled with disregard of consequences and heedless disregard for or indifference to the rights of others, defendant knew or should have known of the danger, and that injury to others was a probability rather than a possibility. It is true this evidence also supports a contrary finding that defendant's driving was nothing more than negligence, it hardly supports less. But where a theory is reasonably probable the question of whether it is more probable than any other theory based on such is for the jury to decide.

We do not find, nor have we been cited to, one of our cases dealing with reckless operation based on circumstantial evidence as this one is. This case is not similar to McBride v. Dexter, 250 Iowa 7, 92 N.W.2d 443, or Hardwick v. Bublitz, 254 Iowa 1253, 119 N.W.2d 886, where in attempting to make a turn to the left the car was driven straight ahead, merely failing to make the turn. Nor is it similar to Beletti v. Schuster, 253 Iowa 1166, 115 N.W.2d 858, Wilcox v. Hilligas, 254 Iowa 204, 117 N.W.2d 42, and Fritz v. Wohler, 247 Iowa 1039, 78 N.W.2d 27, where through momentary inadvertence or negligence the cars were driven into the right-hand ditch. In none of these cases was other traffic involved. In each of these cases it was necessary to infer recklessness from the results, here there is evidence supporting a jury finding based on evidence other than results.

Though not based on circumstantial evidence as here, the following cases tend to sustain our holding: Allbee v. Berry, 254 Iowa 712, 119 N.W.2d 230; Lewis v. Baker, 251 Iowa 1173, 104 N.W.2d 575; Anderson v. Elliott, 244 Iowa 670, 57 N.W.2d 792; Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576; Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258; and Claussen v. Estate of Johnson, 224 Iowa 990, 278 N.W. 297.

III. In view of a possible retrial it is necessary to pass on questions of evidence urged by plaintiff. Plaintiff urges it was error to strike testimony of the witness, Mr. Yakish, as to the speed of defendant's vehicle going over the same highway

in the opposite direction. Plaintiff contends such evidence was admissible to show defendant's knowledge of the highway and his ability to negotiate the curve where the collision occurred at a speed of 80 to 85 m.p.h. That the speed he was then driving would not be admissible to prove speed at the time of the accident in that it was remote is within the judicial discretion of the trial court. Cunningham v. Court, 248 Iowa 654, 666, 82 N.W.2d 292; and Anderson v. Elliott, 244 Iowa 670, 680, 57 N.W.2d 792. However, the plaintiff offers the evidence not to show the speed at the time of collision but to show defendant could negotiate the turn at that speed. This evidence as well as evidence of defendant speeding up and slowing are properly admissible with an instruction limiting the use of the evidence to show defendant's ability to drive around the turn, and as to the speeding up and slowing to show his purpose of testing the car and as a manner of driving. The evidence of defendant driving over Highway No. 74 on other occasions would only be admissible to show knowledge, merely that he had on other occasions been on that highway; the manner of driving or speed he was then driving is not admissible. Likewise evidence of the ultimate potential speed of defendant's car is not admissible unless and until potential speed becomes an issue. The evidence of the improvements on the car to show it was built to attain high speeds is admissible as a part of the general condition of the car and circumstances of the collision. As supporting these views, see State v. Neville, 228 Iowa 1225, 293 N.W. 560; State v. Schrader, 243 Iowa 978, 55 N.W.2d 232; and annotation, 46 A. L. R.2d 9, 21, 23, 89.

The ruling of the trial court dismissing division one was correct, the ruling on division two is in error. The case is reversed and remanded for trial on division two.—Reversed and remanded.

All JUSTICES concur except SNELL, J., who dissents.